UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

OWEN W. BARNABY,

     Plaintiff,

v.

MICHIGAN STATE GOVERNMENT, et al.,
Defendants.

Case No. 1:22-cv-01146

Hon. Robert J. Jonker
Mag. Sally J. Berens

---

### DEFENDANT THE CITY OF BENTON HARBOR'S MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11

     Defendant the City of Benton Harbor ("Benton Harbor") files this motion for sanctions against plaintiff Owen Barnaby under Fed. R. Civ. P. 11. In support of its motion, Benton Harbor relies on the accompanying brief and the facts and law cited therein.

     Respectfully submitted,

     BODMAN PLC
     By: *Thomas J. Rheaume, Jr.*
     Thomas J. Rheaume, Jr. (P74422)
     Emily P. Jenks (P84497)
     6th Floor at Ford Field
     1901 St. Antoine Street
     Detroit, Michigan  48226
     313-259-7777
     trheaume@bodmanlaw.com
     ejenks@bodmanlaw.com
     Attorneys for Defendant the City of Benton Harbor

March 19, 2024

4877-0587-5370_2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

OWEN W. BARNABY,

     Plaintiff,

v.

MICHIGAN STATE GOVERNMENT, et al.,
Defendants.

Case No. 1:22-cv-01146

Hon. Robert J. Jonker
Mag. Sally J. Berens

---

### BRIEF IN SUPPORT OF DEFENDANT THE CITY OF BENTON HARBOR'S MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11

Defendant the City of Benton Harbor ("Benton Harbor") requests that this Court enter an order imposing sanctions against Plaintiff Owen Barnaby ("Mr. Barnaby") under Fed. R. Civ. P. Rule 11. To deter future frivolous filings and to lessen the burden placed on Benton Harbor in having to defend this case, Benton Harbor requests a sanction under Fed. R. Civ. P. 11(c)(4) placing Mr. Barnaby on restricted filer status, absolving Benton Harbor and the other defendants from the responsibility to respond to Mr. Barnaby's motions in this case unless so ordered, and requiring Mr. Barnaby to pay Benton Harbor's actual attorney fees and costs.

### INTRODUCTION AND PERTINENT FACTS

This case is Mr. Barnaby's third federal court proceeding seeking relief for essentially the same harms: (1) damages from the foreclosures of his properties which occurred more than a decade ago, and (2) Mr. Barnaby's perceived "conspiracy theory" between the defendants to withhold those properties from him. As is more fully articulated in Benton Harbor's motion to dismiss, ECF No. 121, Mr. Barnaby's lawsuit is entirely without merit. At a minimum, Mr. Barnaby's sixteen counts are barred by the statute of limitations and also barred because Benton Harbor is entitled to tort immunity. *Id.* Mr. Barnaby's complaint contains claims for which no legal

1

4877-0587-5370_2

theory justifies recovery—for example, "whistleblowing" and "freedom from torture." As to his claims that are legally cognizable, his complaint is meritless because it is devoid of any allegations giving rise to liability under his tort claims. *Id. See also* motion to dismiss filed by former governors Jennifer Granholm and Rick Snyder and Assistant Attorney General Kendall Asbenson (ECF No. 116 and 117).

As the Court is aware, this case was previously dismissed because the Court found that Mr. Barnaby's claims were barred by res judicata or were otherwise devoid of merit. ECF No. 67. The Sixth Circuit disagreed that the complaint was barred by res judicata because this lawsuit alleges wrongdoing by co-defendants Bret Witkowski and Berrien County that occurred during the pendency of the prior lawsuit. ECF No. 74. Benton Harbor was not included as a defendant in Mr. Barnaby's first two lawsuits and Mr. Barnaby's complaint fails to plead any specific fact or allegation that Benton Harbor "conspired" with the defendants to the prior lawsuit. It appears that this action is an attempt to recover for his baseless claims against other defendants where his prior lawsuits failed. Sanctions are appropriate on this basis alone.

In addition, sanctions are also appropriate because Mr. Barnaby has filed **more than twenty requests, motions, and appeals** demanding that the Court enter default judgment against Benton Harbor and all other defendants. He has filed nine papers requesting default (ECF Nos. 31, 32, 75, 76, 77, 81, 88, 95, 124). The magistrate judge has entered two orders denying default judgment since this case was remanded from the Sixth Circuit. ECF Nos. 91 and 96. Mr. Barnaby filed nine separate appeals of the magistrate judge's orders to the District Court. ECF Nos. 93, 94, 96, 100, 109, 110, 112, 113, which affirmed the magistrate's rulings. ECF No. 127. Mr. Barnaby also filed two frivolous interlocutory appeals to the Sixth Circuit, ECF Nos. 129, 134, which have since been dismissed. ECF Nos. 136, 137. No reasonable person would conclude that default

2

judgment is appropriate under these facts. As the Court itself has recognized in its order affirming the magistrate judge's denial of default judgment, EF No. 127, default judgment is not appropriate because Benton Harbor received additional time to respond to his Complaint from the Court (*see* ECF No. 56), Mr. Barnaby did not properly follow the default judgment process under Fed. R. Civ. P. 55, and default judgment is within the sole discretion of the Court and is *not* an immediate or automatic sanction.

Benton Harbor sent a letter to Mr. Barnaby detailing the basis for this motion on February 16, 2024. A copy of the letter is attached as **Exhibit A**. Benton Harbor asked that Mr. Barnaby notify the Court of its intent to withdraw his requests and motions for default judgment and also withdraw his improper interlocutory appeal to the Sixth Circuit. Mr. Barnaby responded on February 20, 2024, opposing Benton Harbor's request. A copy of Mr. Barnaby's response is attached as **Exhibit B.** He has not withdrawn his requests for default judgment.

## ARGUMENT

Even *pro se* plaintiffs must comply with the Federal Rules of Civil Procedure, and even *pro se* plaintiffs can be sanctioned under Rule 11. Mr. Barnaby has repeatedly abused the judicial system by both (1) filing repetitive wasteful lawsuits, and (2) filing ***more than twenty papers*** seeking the default of all defendants despite the fact that the Court has determined that default is not appropriate. Mr. Barnaby has violated Rule 11 and the appropriate sanction to deter Mr. Barnaby from continuing to file meritless requests for entry of default is to place him on restricted filer status and to require Mr. Barnaby to pay for Benton Harbor's reasonable attorney's fees and costs in having to defend his baseless lawsuit and motions.

**I.     Mr. Barnaby has violated Fed. R. Civ P. 11 by repeatedly filing frivolous lawsuits and dozens of motions and appeals seeking entry of default judgment.**

3

Under any measure—even the leniency afforded to pro se litigants—Mr. Barnaby has violated Rule 11. He has filed repeated frivolous lawsuits and has submitted an unreasonably excessive number of requests for default judgment in this lawsuit. His repeated requests for default are unsupported by fact or law and sanctions are appropriate.

Fed. R. Civ. P. 11(b) requires a party, including a pro se litigant, to conduct a reasonable inquiry before presenting a pleading, written motion, or other paper to the court, to confirm that the "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and that the "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). "[T]he central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990). The rule "affords the district court the discretion to award sanctions when a party submits to the court pleadings, motions, or papers that are presented for an improper purpose, are not warranted by existing law or a nonfrivolous extension of the law, or if the allegations and factual contentions do not have evidentiary support." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir. 2002).

Like attorneys, pro se litigants such as Mr. Barnaby "must comply with Rule 11 and make a reasonable inquiry as to whether a complaint is well-grounded and warranted by existing law." *Stevens v. Mooney*, 81 F.3d 161, at *1 (6th Cir. 1996). Of course, "Plaintiff's pro se status and the absence of legal advice are appropriate factors to be considered as special circumstances when determining if Rule 11 has been violated." *Booker v. Buckely*, 810 F.2d 199 (Table), 1986 WL 18396, at *1 (6th Cir. 1986).

4877-0587-5370_2

Sanctions are appropriate in this case even considering the liberal standards afforded to *pro se* parties because Mr. Barnaby has repeatedly filed baseless lawsuits and meritless demands. This Court has previously found that a pro se plaintiff violated Rule 11 in nearly identical circumstances in *Kim v. City of Ionia*. Case No. 1:20-cv-843, 2021 U.S. Dist. LEXIS 217823, 2021 WL 5053967 (W.D. Mich., January 8, 2021), at *12 (attached as **Exhibit C**). Like Mr. Barnaby, the *Kim* plaintiff had filed three separate federal lawsuits based on the same underlying events, had filed repeated baseless motions and made attempts to circumvent unfavorable court rulings, resulting in abuse to the defendants:

> As set out above, this is Plaintiff's third federal lawsuit based on the same set of underlying events, and the latest in quite literally dozens of attempts to get around court decisions that have found his arguments to be without merit. Though the statutes he cites may be new, and his arguments updated to encompass more recent events, this attempt is almost identical to the attempts he has made and lost before this Court and the Court of Appeals. Plaintiff is clearly on notice that his arguments underlying this case—that his State Court suit was improperly removed—are not well grounded in fact or based on a plausible view of the law. **The Court, and Defendants, should not have to repeatedly deal with Plaintiff's losing arguments.** The Court acknowledges Plaintiff's pro se status, and his clear difficulty with the English language. Still, there appears to be no way Plaintiff could be presenting the claim in good faith and in compliance with Rule 11. Parties participating in a case pro se are still obligated to follow court rules, orders, and process. **Plaintiff's continued pursuit of issues already decided, the filing of multiple meritless motions, and his repeated disregard for Court rules amounts to such an abuse.**

*Id.* (emphasis added). Benton Harbor agrees with the Court's Rule 11 reasoning in *Kim* and asserts that the same conclusion should result here. Like the *Kim* plaintiff, Mr. Barnaby has filed repeated baseless federal lawsuits and appeals arising from the same set of facts, "the latest in quite literally dozens of attempts to get around court decisions that have found his arguments to be without merit." *Id.* Both Mr. Barnaby's underlying lawsuit and his attempts to obtain default judgment are

5

not grounded in fact or based on a plausible view of the law. The case at bar is Mr. Barnaby's third federal lawsuit seeking damages from the foreclosure of property that occurred ten years ago.

Further, like the *Kim* plaintiff, Mr. Barnaby is also "on notice that his arguments . . . are not well grounded in fact or based on a plausible view of the law[,] *id.*, given that he has been denied on the merits of his case twice before, and has also been repeatedly denied default judgment in this case. It is the latest in a series of attempts to re-litigate issues by couching them in unsupported claims that the defendants have conspired to keep his properties from him through fraud, forgery, or other wrongdoing. Mr. Barnaby's "continued pursuit of issues already decided, the filing of multiple meritless motions, and his repeated disregard for Court rules amounts to" violation of Fed R. Civ. P. 11, just like the plaintiff in *Kim. Id.*

In addition, sanctions are warranted because of Mr. Barnaby's persistent filing of papers seeking entry of default judgment of $22.5 million. Mr. Barnaby has been told repeatedly by this Court that it will not grant entry of default judgment against Benton Harbor. ECF Nos. 91, 96, 127. Instead of accepting that Magistrate Judge Berens and District Court Judge Jonker properly exercised their discretion under Fed. R. Civ. P. 55, Mr. Barnaby has filed more than twenty motions and appeals trying to avoid the Court's unfavorable decision. Mr. Barnaby has caused Benton Harbor to incur additional unnecessary costs and fees because he has persistently sought entry of default judgment for Benton Harbor, despite the fact that Benton Harbor has actively participated in this action and each of Mr. Barnaby's appeals.

The Court has already recognized that Mr. Barnaby's basis for seeking default is unreasonable under Fed. R. Civ. P. 55. No reasonable person would agree that default judgment— a harsh sanction warranted in only the most extreme cases—is appropriate here, where Benton Harbor has appeared, participated in plaintiff's appeal to the Sixth Circuit, has twice received

additional time from the district court to respond to plaintiff's complaints, and has now filed a pending motion to dismiss under Fed. R. Civ. P. 12(b)(6). Default is also not warranted because Mr. Barnaby did not follow the proper steps to obtain default judgment under  Fed. R. Civ. P. 55, and because he improperly sought a sum certain default under Fed. R. Civ P. 55(b)(1) because his damages affidavit, *see, e.g.*, ECF No. 124-1, PageID.1624, contains allegations of $22.5 million in damages that are speculative in nature and not "a sum certain or a sum that can be made certain by computation" as required by Fed R. Civ. P. 55(b)(1) (e.g., speculative rental profits, property values, and emotional distress damages).

Nor is it reasonable for Mr. Barnaby to *continually* seek this relief after his motions for default were denied. The Court has denied Mr. Barnaby's post-appeal requests for default judgment twice. ECF No. 127 (affirming magistrate judge's orders denying default judgment, ECF Nos. 91 and 96). Undeterred, Mr. Barnaby filed repetitive appeals of Magistrate Judge Berens' orders, ECF Nos. 93, 94, 96, 100, 109, 112, and two appeals to the Sixth Circuit of this Court's affirmance of those orders, ECF Nos. 129 and 134. While his appeals to District Court Judge Jonker and the Sixth Circuit were pending, he also filed at two new requests for default judgment, ECF Nos. 95 and 124. The sheer volume of duplicative filings on just one issue is unreasonable and amounts to improper abuse of the judicial system. This is the precise circumstance for which Rule 11 was created: To deter and an overly litigious party from continuing to partake in harassment tactics, and to compensate the party burdened with responding.

## II.     The appropriate sanction in this case is placing Mr. Barnaby on restricted filer status and requiring Mr. Barnaby to pay costs and fees to Benton Harbor.

*In Jackson v. Law Firm*, 875 F.2d 1224, 1229-30 (6th Cir. 1989), the Sixth Circuit set forth four factors to be considered when crafting sanctions under Rule 11. *Danvers v. Danvers*, 959 F.2d 601, 605 (6th Cir. 1992). The first and most important factor is deterrence. *Id.* Second, the

4877-0587-5370_2

sanctions are meant to compensate the party receiving the award for expenses incurred in litigating the improperly filed suit and the sanctions motion; however, these first two factors must be balanced. *Id.* Because deterrence is the primary goal, the minimum necessary to deter the sanctioned party is the proper award, even if this amount does not fully compensate the moving party. *Id.* "The central purpose of Rule 11 sanctions is deterrence, not compensation." *Williams v. Supreme Court of Kentucky*, 914 F.2d 259, at *3 (6th Cir. 1990). The third factor is mitigation. *Danvers*, 959 F.2d at 605. The moving party must mitigate its expenses by not expending useless effort on frivolous actions. *Id.* Finally, there must be consideration of the sanctioned party's ability to pay. The idea is not to bankrupt an attorney—or, as here, a pro se litigant—but to deter [him] from repeating the conduct prohibited by Rule 11. *Id.* As the Court has previously noted, "[t]he Court under its inherent powers cannot completely foreclose a litigant from access to the court." *Kim*, 2021 U.S. Dist. LEXIS at *12 (citing *Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996)). However, "'[a] district court has the authority to issue an injunctive order to prevent prolific and vexatious litigants from filing pleadings without first meeting pre-filing restrictions.'" *Id.* (quoting *Stewart v. Fleet Fin.*, 229 F.3d 1154 (6th Cir. 2000) (table decision)).

In *Kim*, this Court imposed restricted filer status against the plaintiff, relieved the defendants of their responsibility to respond to motions filed by the plaintiff unless ordered to respond by this Court, and required that plaintiff pay a $500 fee to each defendant. *Id.* Benton Harbor asserts that the same sanctions are appropriate here considering the factors the Court must consider when crafting sanctions: deterrence, compensation, mitigation, and Mr. Barnaby's ability to pay. However, Benton Harbor requests an order requiring Mr. Barnaby to pay *all* of Benton Harbor's reasonable fees and costs, instead of the lesser sanction imposed in *Kim*, due to the extreme amount of filings submitted by Mr. Barnaby and the unreasonable costs that Benton

4877-0587-5370_2

Harbor has had to incur in defending Mr. Barnaby's lawsuit, appeals, and frivolous attempts to obtain default judgment. Mr. Barnaby has not proceeded *in forma pauperis* in this action and Benton Harbor has no reason to believe that he is unable to compensate Benton Harbor's reasonable attorney fees and costs.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should enter an order placing Mr. Barnaby on restricted filer status, relieve Benton Harbor and the other defendants from their responsibility to respond to Mr. Barnaby's motions and submissions in this case unless the Court orders defendants to respond, and require Mr. Barnaby to pay Benton Harbor's reasonable costs and attorney fees in having to defend against his baseless lawsuits and persistent, meritless attempts to obtain default judgment.

Respectfully submitted,

BODMAN PLC
By: <u>*Thomas J. Rheaume, Jr.*</u>
Thomas J. Rheaume, Jr. (P74422)
Emily P. Jenks (P84497)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan  48226
313-259-7777
trheaume@bodmanlaw.com
ejenks@bodmanlaw.com
Attorneys for Defendant the City of Benton Harbor

Date: March 19, 2024

4877-0587-5370_2

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.1(d)</u>

Benton Harbor certifies that it has complied with Local Rule 7.1(d). Counsel sought concurrence from Mr. Barnaby on March 18, 2024. Mr. Barnaby did not concur.

Respectfully submitted,

BODMAN PLC

By: <u>*Thomas J. Rheaume, Jr.*</u>
   Thomas J. Rheaume, Jr. (P74422)
   Emily P. Jenks (P84497)
  6th Floor at Ford Field
  1901 St. Antoine Street
  Detroit, Michigan  48226
  313-259-7777
  trheaume@bodmanlaw.com
  ejenks@bodmanlaw.com
  Attorneys for Defendant the City of Benton Harbor

March 19, 2024

10

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.3

Benton Harbor certifies that this brief is in compliance with LR 7.3(ii). Microsoft Word's word count function reports a total word count of 2,786, as defined by LR 7.3(i).

Respectfully submitted,

BODMAN PLC

By: *Thomas J. Rheaume, Jr.*
  Thomas J. Rheaume, Jr. (P74422)
  Emily P. Jenks (P84497)
 6th Floor at Ford Field
 1901 St. Antoine Street
 Detroit, Michigan  48226
 313-259-7777
 trheaume@bodmanlaw.com
 ejenks@bodmanlaw.com
 Attorneys for Defendant the City of Benton Harbor

March 19, 2024

11

# EXHIBIT A

**THOMAS J. RHEAUME, JR.**
TRHEAUME@BODMANLAW.COM
313-392-1074

February 16, 2024

**VIA EMAIL ONLY**

BODMAN PLC
6TH FLOOR AT FORD FIELD
1901 ST. ANTOINE STREET
DETROIT, MICHIGAN 48226
313-393-7579 FAX
313-259-7777

Owen Barnaby
Bossproperties96@gmail.com

Re:     *Barnaby v. Michigan State Government, et al.*, Case No. 1:22-cv-01146 (W.D.
        Mich.) and Case No. 24-1086 (6th Cir.)
        Benton Harbor's Notice of Rule 11 Violation and Sanctions



Dear Mr. Barnaby:

As you are aware, I represent the City of Benton Harbor. This correspondence is to
notify you under Fed. R. Civ. P. 11(c) that Benton Harbor intends to file a motion for
sanctions due to your frivolous and excessive filings regarding entry of default under
Fed. R. Civ P. 55.

Although your entire underlying lawsuit likely violates Rule 11, Benton Harbor has
been patient with you given your status as a pro se plaintiff and has not sought
sanctions to date based on the merits of your underlying claims in this suit (though
reserves the right to do so). But Benton Harbor will no longer tolerate your
unreasonable pursuit of default judgment. As explained in Benton Harbor's responses
to your requests for default and in the magistrate's orders denying your requests,
default is unwarranted against Benton Harbor. You are not entitled to an "automatic"
default judgment under the court rules, no matter how many requests and appeals
you file. Your incessant submissions requesting default are clearly attempts in bad
faith to harass Benton Harbor and the other defendants and incur costs.

To date, you have submitted **nine** papers to the Court asking for entry of default
and/or default judgment. ECF Nos. 31, 32, 75, 76, 77, 81, 88, 95, 124. The magistrate
judge has denied your requests for entry of default. ECF Nos. 91 and 96. You have
since filed **nine** separate papers appealing those orders. ECF Nos. 93, 94, 96, 100,
109, 110, 112, 133, including one frivolous interlocutory appeal to the Sixth Circuit,
ECF No. 129.

Under any measure—even the leniency afforded to pro se litigants—this is an
unreasonably excessive number of filings on just one issue that is neither sounded in
fact nor law. It is not reasonable to continue filing new requests seeking the exact same
relief. Your interlocutory appeal is especially frivolous and burdensome on Benton
Harbor. An interlocutory appeal is only acceptable under 28 U.S.C. 1292(b) when the
underlying order being appealed states in writing "that such order involves a
controlling question of law as to which there is substantial ground for difference of
opinion and that an immediate appeal from the order may materially advance the

DETROIT  |  TROY  |  ANN ARBOR  |  CHEBOYGAN  |  GRAND RAPIDS

4860-2056-6689_1

February 16, 2024
Page 2

ultimate termination of the litigation." <u>Absent this language</u>, the appellate court will not hear an interlocutory appeal. *See Wiltse v. Clarkson*, 542 F.2d 363 (6th Cir. 1976).

We are aware that you are a pro se litigant and have afforded you a great deal of courtesy thus far. But even pro se litigants must comply with the Federal Rules of Civil Procedure. Under Fed. R. Civ. P. 11(b)(2), pro se litigants must certify to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the "legal contentions [in their papers] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Your argument that Benton Harbor should be defaulted when it was afforded additional time by the Court both before and after the Sixth Circuit appeal, and when it has actively litigated in this matter, and has now responded to your complaint with a motion to dismiss, is the very definition of frivolous. At the very least, your default requests that were filed after your appeal are meritless because they seek the same exact request as your appeal. No reasonable inquiry under these circumstances would conclude that (1) default is warranted, or (2) that *continuously seeking* default is warranted while you have a pending appeal on that issue. Moreover, your request for the clerk to enter a default for a sum certain under Fed. R. Civ. P. 55(b)(1) is meritless. As Benton Harbor iterated in its response to your appeal to the district court judge (ECF No. 121), your alleged costs of speculative real property damages, "rebuilding" costs, lost rental income, emotional damages, and compensatory damages do not constitute a sum certain.

Even if your underlying requests for default judgment had any merit whatsoever (which they do not), a pro se litigant cannot present any paper to the court "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Your excessive requests for entry of default and default judgment are clearly intended to harass our client (and the other defendants). Your intent to harass and proceed in bad faith is underscored by your January 28, 2024 e-mail requesting a stipulation on default judgment and, if the defendants failed to stipulation you threatened to alert the media to your lawsuit:

You have also unnecessarily delayed this proceeding and needlessly increased the costs of litigation in violation of Rule 11 by forcing the parties to respond to your barrage of motions and appeals seeking the same exact request.

Benton Harbor has incurred enough expense defending your baseless lawsuit and frivolous requests for default. It will not continue to tolerate your harassment and threats. As such, if you do not notify the Court of your intent to withdraw your requests for default and motions for default judgment and also withdraw your interlocutory appeal to the Sixth Circuit by **February 29, 2024**, we will proceed with a motion for sanctions.

February 16, 2024
Page 3

Be advised that, along with monetary sanctions for the costs and fees associated with your frivolous demands for default judgment, we will request that the Court enter an order placing you in restricted filer status with the court so that your filings are subject to review by the court before they are accepted.

Very truly yours,


/s/ Thomas J. Rheaume, Jr.

Thomas J. Rheaume, Jr.

cc:     Emily P. Jenks

**EXHIBIT B**

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

OWEN W. BARNABY,                                      )
           Plaintiff                               )

           Vs.                                     ) Hon. Robert  J.  Jonker
                                                   ) Hon. Mag. Sally J. Berens

MICHIGAN STATE GOVERNMENT, ET, AL
           Defendants                              ) Case No. 1:22 -CV- 1146

| | |
|---|---|
| Owen W. Barnaby | Attorney T. Hackworth |
| P.O. Box 1926 | <u>Berrien County Government</u> |
| Kennesaw, GA 30156 | 701 Main Street, St. Joseph, Michigan 49085 |
| (678) 382- 4183 | T. (269) 983-7111, ex 8416 \| thackworth@berriencounty.org |
| Bossproperties96@gmail.com | |
| | Attorney, T. Seth Koches, |
| | Niles-Charter-Township/Board of Trustee |
| | 470 W. Centre Ave., Ste. A, Portage, MI. 49024 |
| | T. 269-382-4500 Koches@michigantownshiplaw.com |
| | |
| | Jeffery R. Holmstrom (P29405) |
| | Holmstrom Law Office PLC |
| | 830 Pleasant Street Suite 100 |
| | St. Joseph, MI 49085 |
| | T. (269)-983-0755 \| jeff@holmstromlawoffice.com |
| | |
| | Attorney Emily P Jenks |
| | 6th Floor at Ford Field |
| | 1901 St. Antoine St. Detroit, MI 48226 |
| | T: 313-393-7582     \|     EJenks@bodmanlaw.com |
| | |
| | Berrien County Courthouse, |
| | 811 Port St, St Joseph, MI 49085 |
| | |
| | Pendrick Kimberly Attorney General of Michigan |
| | 525 W. Ottawa, 5th Floor |
| | P.O. Box 30736, Lansing, MI 48909 |
| | T. 517-335- 7659   \| PendrickK@michigan.gov |

1

**RE:**          **Response to Defendant's Benton Harbor and Its**
                  **Attorneys Retaliatory Letter of Demands and Threats**

Plaintiff filed his Second Amended Complaint(ECF No. 10), lawsuit against Defendants because, Defendants injured Plaintiff and have been using Courts, inclusive of this District Court's R&R, Orders and Final Judgment, (ECF Nos. 16, 62, 67, 68), as defenses to cover up their misconducts or benefiting for the last fourteen years of continuous forgery, fraud, thievery that caused Plaintiff to lose all his same real properties, his employment, his livelihood,  suffered homelessness, ultimately contributed to the death of our son, great pain and suffering and emotional distress.  The suit states,

"19. Plaintiff alleges that, at all times mentioned in this Complaint Defendants acted jointly and in concert with each other or should have reported their unlawful actions to the other Defendants. As such, each Defendant had the duty and or their duty afford them the opportunity to protect the Plaintiff from the unlawful actions and or to remedy the unlawful actions in whole, either by collective efforts or individual effort to retore Plaintiff in full, but each Defendant failed and or refused to perform such duty, thereby proximately causing the injuries herein Plaintiff's Complaint." (ECF No. 10, PageID.167) and (ECF No. 36,  PageID.181)

**O**n November 17,2023, this Sixth Circuit Appellate Court entered Order and Judgment (ECF Nos. 72, 73), that is binding on the District Court, which were violated by District Court's Orders-(ECF Nos. 91, 96, 127 and 131), now on appeal.  The Sixth Circuit Court's Order the District Court violated, states.

"We review default-judgment decisions for an abuse of discretion. Prime Rate Premium Fin. Corp., Inc. v. Larson, 930 F.3d 759, 768 (6th Cir. 2019). The district court found that its dismissal of the second amended complaint mooted Barnaby's motions for default judgment. Because the district court erred in dismissing the second amended complaint, however, it also erred in finding that the motions for default judgment were moot." **"…VACATE** the judgment in part, and **REMAND** for further proceedings consistent with this order.".  Please see, (Case: 23-1134, Document: 29-1 Filed: 11/17/2023,  Page: 6).

Further, on December 27, 2023, the Magistrate Judge's Order-(ECF No. 91), following remand, placed its prior Orders-(ECF No. 25, 27, 35, 56, 62, 67, 68), as controlling over the Sixth Circuit Court's Order and Final Judgment(ECF Nos. 72, 73), that was affirmed by the District Court, Order-(ECF No. 127). Below states:

"**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File a Third Amended Complaint (ECF No. 37) is GRANTED. The Clerk shall docket Plaintiff's proposed Third Amended Complaint (ECF No. 36). Defendants who have appeared in this action shall have **28** days from the date of this Order to respond to the Third Amended Complaint."

"**IT IS FURTHER ORDERED** that Plaintiff's Motions for Entry of Default Judgment (ECF Nos. 28, 31, 75, 77, and 81) are DENIED. Plaintiff shall have **45** days from the date of this Order to effect proper service on the unserved Defendants. Failure to

2

effect service within that time without a showing of good cause shall result in dismissal of such Defendants without prejudice."

        "IT IS FURTHER ORDERED that Defendant City of Benton Harbor's Motion to Extend Time (ECF No. 85), seeking 28 days to respond to the Third Amended Complaint, is **GRANTED."**

Plaintiff appealed the Magistrate Judge's Orders (ECF Nos. 91, 96), to the District Court, on docket numbers (ECF Nos. 94, 100, 109, 110),  and it affirmed Magistrate Judge's Orders (ECF Nos. 127), as follows:
        "The Magistrate Judge was absolutely correct on this as a matter of fact and law, and the Court adopts her reasoning as its own.  For the same reason, the Court now rejects Barnaby's two new applications for entry of default, (ECF Nos. 95, 124), because he has once again failed to show that any Defendant is in default."
    "The Magistrate Judge's Orders, (ECF Nos. 91, 96), are **AFFIRMED.**"; "Plaintiff's appeals, (ECF Nos. 94, 97, 100, 109, 110–12), are **OVERRULED**."; "Plaintiff's two new applications for entry of default, (ECF Nos. 95, 124), are **DENIED."**

        Plaintiff argued in the District Court, (ECF No. 100,  PageID.1245- 1247);  (ECF No. 109,  PageID.1370- 1371) and further contends, that, Defendant City of Benton Harbor must be Defaulted as it was properly served by Plaintiff with Summonses and Copies Complaint (ECF Nos.10, 36, 37), but failed to file answers or Motion Under Rule 12, to Plaintiff's Second Amended Complaint(ECF No. 10) and failed to appeal the District Court's Orders and Final Judgment (ECF Nos, 35, 56, 67. 68). Plaintiff warrants Default and Default Judgment and its Granted Motion to the extent (ECF No. 85, 96) is moot and must be reversed. Moreover, the record shows that, the City of Benton Harbor filed its Motion-(ECF No, 33) to respond to Plaintiff's, 'Second amended Complaint-(ECF No, 10) on January 04, 2023, until 28 days after the Report and Recommendation-(ECF No, 16), that the Court Granted on the same day, Order-(ECF No, 35). The Report and Recommendation-(ECF No, 16) was rule on February 13, 2023, and the City of Benton Harbor Defendant's answer or Rule 12 motion the Plaintiff's 'Second amended Complaint-(ECF No, 10) was due on March 13, 2023. Yet, the District Court Denied Plaintiff's Default-(ECF Nos. 32, 75, 95, 124) and Default Judgment 31, 32, 77, 81, 88, 95 ) against It.
        The Magistrate Judge's moots Orders(ECF Nos 91, 96) Denying Plaintiff's Default and Default Judgment, that the District Court Order (ECF No.127) affirmed.
        "The Court granted the requested extension on January 4, 2023. (ECF No. 35.) Because the Court ultimately overruled Plaintiff's objections, adopted the December 14, 2022, Report and Recommendation, and entered judgment for Defendants, the City was never required to answer Plaintiff's second amended complaint. Thus, at least at this juncture, there is no basis for entry of default." (ECF No. 91, PageID.1120).

        Plaintiff contends, because the District Court's Order and Final Judgment(ECF Nos, 67, 68) were reversed by the Sixth Circuit Order and Judgment-(ECF Nos,72, 73), it is the Sixth Circuit Order and Judgment that is controlling and moots the District Court's Orders-(ECF Nos. 91, 96, 127, and 131) **Denying** Plaintiff's Default-(ECF Nos,32, 75, 95, 124), and Default Judgment-(ECF Nos,31, 77, 81, and 88), against the Benton Barbor Defendant.

The law is clear,  Fed. R. Civ. P. 12(a)(1)(A)(i).

(a) TIME TO SERVE A RESPONSIVE PLEADING.

   (1) *In General.* Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

    (A) A defendant must serve an answer:

      (i) within 21 days after being served with the summons and complaint.

  The District Court Summons states, "YOU ARE HEREBY SUMMONS  and required to serve upon Plaintiff, an answer to the attached complaint or a Motion under Rule 12 of the Federal Rule of Civil Procedure within **21 days** after service of this Summons on you (not counting the day you received it). If you fail to respond, judgment by default will be entered against you for the relief demanded  in the complaint. You also must file you answer or motion with the Court."

    Beton Harbor should either appealed to the District Court's Orders and Final Judgment (ECF Nos. 35, 56, 62, 67, 68) or filed a motion to safeguard any rights[1].  Instead, It abandoned or forfeited any rights It may have had. The District Court's Orders (ECF Nos. 91, 96, 127, 131) on appeal had improperly restored to the Defendant that, which It willfully forfeited contrary to laws and in violations of this Sixth Circuit's Order (ECF No.72), and further prejudice Plaintiff beyond the Defendant's 14 years of pain and sufferings to Plaintiff and the death of his family.

    Clearly, Plaintiff's Request for Default and Default Judgment against City of Benton Harbor Defendant for failed or forfeited to file an answer to Plaintiff's Second Amended Complaint-(ECF No 10), is proper. As it did not adhere to its own Granted Motion-(ECF Nos. 33, 35), to file answer to Plaintiff's Second Amended Complaint-(ECF No 10), ultimately by March 13, 2023; nor did it appealed the District Court's Order and Final Judgment-(ECF Nos. 67, 68) or a Motion to  safeguards any rights it may have had. It has been [over one year] after the Defendant was properly served, these controlling laws are applicable to reverse the District Court's Orders: (The doctrine of the law of the case) and or (The law of the case doctrine); Res Judicata; Fed. R. Civ. P. 12(a)(1)(A)(i);  and Fed. R. Civ. P. 55 (a), (b) (1) or (2).

---

[1] Plaintiff, an In Pro Se, Litigant, filed Appeals-(ECF Nos. 69, 129)  and Motion-(ECF No.126), to safeguard his rights, and the rights that he did not raise this Circuit Court found that he forfeited.  Plaintiff contends that, the same must be apply to all the Defendants in this case.

Given all the above, the Plaintiff opposed Defendant City of Benton of Harbor's and Its Attorneys', **RETALIATORY DEMANDS AND THREATS** 'Notice of Rule 11 Violation and Sanctions', that,

> "…if you do not notify the Court of your intent to withdraw your requests for default and motions for default judgment and also withdraw your interlocutory appeal to the Sixth Circuit by February 29, 2024, we will proceed with a motion for sanctions."

Plaintiff opposed Defendant City of Benton of Harbor's and Its Attorneys', **RETALIATORY DEMANDS AND THREATS** 'Notice of Rule 11 Violation and Sanctions', because:  1). But for their forfeited of the Defendant and Its Attorneys' Mr. Thomas J. Rheaume, Jr. and Ms. Emily P. Jenks to file a response to Plaintiff's  Second Amended Complaint-(ECF No. 10) Plaintiff would have no grounds to file Default and Default Judgment against Defendants.  2). But for its continuous forgery Plaintiff would have no grounds to file Default and Default Judgment against Defendants. 3). But for over 14 years of Plaintiff and family suffering at the hands of the Defendants, Plaintiff would have no grounds to file Default and Default Judgment against Defendants .

As such Defendant City of Benton of Harbor's and Its Attorneys', **RETALIATORY DEMANDS AND THREATS** 'Notice of Rule 11 Violation and Sanctions', violates the First Amendment (Amendment I). Plaintiff opposed pursuant to the First Amendment (Amendment I) to the United States Constitution prevents the government from making laws that: abridge the freedom of speech, the freedom of the press, the freedom of assembly, or the right to petition the government for redress of grievances.

Lasty, Plaintiff rejects or opposes the Defendant City of Benton of Harbor's and Its Attorneys', **RETALIATORY DEMANDS AND THREATS** 'Notice of Rule 11 Violation and Sanctions'.  Moreover, Plaintiff contended that such Sanctions should be applied to the Defendant City of Benton of Harbor and Its Attorneys, Mr. Thomas J. Rheaume, Jr. and Ms. Emily P. Jenks, if file such a futile and harassing motion, without, remorse for suffering of Defendant's; fourteen years of continuous forgery, fraud, thievery that caused Plaintiff to lose all his same real properties, his employment, his livelihood,  suffered homelessness, ultimately contributed to the death of our son, great pain and suffering and emotional distress.

Respectfully Submitted,

Owen W. Barnaby, In Pro Se

Dated February 20, 2024

5

**EXHIBIT C**

 Positive

As of: January 30, 2024 6:05 PM Z

# Kim v. City of Ionia

United States District Court for the Western District of Michigan, Southern Division

January 8, 2021, Decided; January 8, 2021, Filed

CASE No. 1:20-CV-843

**Reporter**

2021 U.S. Dist. LEXIS 217823 *; 2021 WL 5053967

GWANJUN KIM, Plaintiff, v. CITY OF IONIA, et al., Defendants.

**Subsequent History:** Affirmed by *Kim v. City of Ionia, 2021 U.S. App. LEXIS 23754 (6th Cir. Mich., Aug. 10, 2021)*

**Prior History:** *Kim v. City of Ionia, 2020 U.S. Dist. LEXIS 260027, 2020 WL 12432394 (W.D. Mich., Oct. 27, 2020)*

## Core Terms

district court, removal, state court, claim preclusion, sanctions, allegations, default, lawsuit, decisions, cause of action, defense motion, litigated, merits, racketeering activity, amended complaint, predicate act, parties, Filer, deter, failure to state a claim, summary judgment, motions, notice, ***pro se***, proceedings, four-year, frivolous, pleadings, courts, summary judgment motion

**Counsel:** **[*1]** For David K. Otis, defendant: Michael Patrick Ashcraft, Plunkett Cooney (Bloomfield Hills), Bloomfield Hills, MI.

For Ionia City of, Brandon Anderson, Jason Eppler, Thomas Troy, Jennifer Skorka, defendants: Michael S. Bogren, Plunkett Cooney (Grand Rapids), Grand Rapids, MI.

RESTRICTED FILER GwanJun Kim, plaintiff, ***Pro se***, Davison, MI.

**Judges:** HON. ROBERT J. JONKER, CHIEF UNITED STATES DISTRICT JUDGE.

**Opinion by:** ROBERT J. JONKER

## Opinion

**OPINION AND ORDER**

**INTRODUCTION**

Almost nine years, ago, on March 20, 2012, police conducted a traffic stop on Plaintiff, Gwanjun Kim. This is Plaintiff's third federal lawsuit asserting claims related to that traffic stop. Plaintiff lost the first case in this Court, and the Court of Appeals affirmed the Judgment. After losing the appeal and failing in several collateral attacks on the original decision thereafter, Plaintiff filed a second lawsuit in the Eastern District of Michigan. He lost there too, both in the District Court and the Court of Appeals. The third time is not the charm for Plaintiff. This lawsuit also fails. In addition, because Plaintiff has violated *Rule 11* and again[1] abused the judicial process, appropriate sanctions are essential to deter similar misconduct.

The matter is before the Court on Plaintiff's motion for summary judgment (ECF No. 46), two defense motions to dismiss for failure to state a claim (ECF Nos. 41 and 42) and two defense motions for sanctions under *Rule 11*. (ECF Nos. 64 and 73).[2] After careful review, the

---

[1] Plaintiff engaged in a similar pattern of litigation abuse in a series of cases based on his dispute with Grand Valley State University. *See Kim v. Grand* **[*2]** *Valley State University*, Case No. 1:18-cv-107, ECF No. 20-1 (W.D. Mich. May 10, 2018) (summarizing Plaintiff's multiple filings in this and other districts). On May 10, 2018, this Court placed Plaintiff on Restricted Filer status. (*Id.* at ECF No. 20). That restriction was limited, however, to provide for screening under *Section 1915(e)(2)* in those cases in which Plaintiff sought to proceed *in forma pauperis*. Plaintiff has paid the filing fee in this case and so Plaintiff's restricted status, as it currently stands, is not implicated in this action.

[2] The defendants in this case are those named in the original lawsuit *Kim v. Ionia*, Case No. 1:12-cv-1195 (W.D. Mich. filed Oct. 31, 2012) (hereinafter "*Kim I*") plus Defendant David Otis,

2021 U.S. Dist. LEXIS 217823, *2

Court determines that oral argument is unnecessary to resolve the motions. For the reasons set out here, the Court denies Plaintiff's motion for summary judgment; grants the defense motions to dismiss; and grants in part the defense motions for sanctions.

## BACKGROUND

*1. Kim I - Round I*

*A. Proceedings in the District Court*

In 2012, Plaintiff sued the City of Ionia, City Manager Jason Eppler, Director of Public Safety Troy Thomas, Officer Jennifer Skorka, and Officer Brandon Anderson for what he alleged was unlawful discrimination on account of race or national origin during a March 2012 traffic stop (*Kim I*, ECF No. 1-1). Plaintiff brought two state law claims under the Michigan statutes, as well as a claim under *42 U.S.C. § 1983*. On October 31, 2012, Defendants removed the case to this Court, citing this Court's federal question jurisdiction as the basis for removal. (*Kim I*, ECF No. 1, **[*3]** PageID.1).

Plaintiff sought a remand to State Court, stating that removal was improper because he had filed an amended complaint in the State Court. (*Kim I*, ECF No. 8). He also sought leave to file a First Amended Complaint to add additional detail and to refine his claims under *42 U.S.C. § 1983*, Title VI of the Civil Rights Act of 1964, and state law. (*Kim I*, ECF No. 9). On December 17, 2012, the Honorable Gordon J. Quist denied Plaintiff's motion to remand and granted the motion to amend. (*Kim I*, ECF No. 17). This Order provided the first, but certainly not the last, instance where a court concluded Plaintiff's arguments with respect to removal were without merit. In denying Plaintiff's motion to remand, the court observed:

> Plaintiff cites *28 U.S.C. § 1446(b)(3)*, noting that he filed a First Amended Complaint within 30 days after Defendants filed their notice of removal. Plaintiff misconstrues *§ 1446(b)(3)*, which provides that a *defendant* can remove the case within thirty days after receiving a "copy of an amended

pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." If this case is not initially removable but the plaintiff files an amended complaint that **[*4]** is removable, the defendant then has 30 days from receipt of the amended complaint to remove the case. *See Bramlett v. Bajric, No. 1:12-cv-2148-TWT, 2012 U.S. Dist. LEXIS 133925, 2012 WL 4329242, at *2 (N.D. Ga. Sept .19, 2012)* (citing the two distinct thirty-day periods for removal). Here, the case was initially removable, so Defendants properly removed the case within 30 days as required. Plaintiff's reliance on *§ 1446(b)(3)* for remand is simply wrong.

(*Kim I*, ECF No. 17, PageID.126-127).

Thereafter the parties filed cross motions for summary judgment. In an Opinion and Order dated July 31, 2013, Judge Quist granted the defense motion for summary judgment; denied Plaintiff's motions; and dismissed the case. (*Kim I*, ECF No. 60). The Court determined that Plaintiff's *Section 1983* claims were barred by collateral estoppel, but that even if they were not barred, Plaintiff's *Fourth Amendment* claims failed because: (1) Plaintiff had no expectation of privacy in the information on his license plate; (2) the officers had probable cause to stop Plaintiff, and (3) because there was no evidence that the officers targeted Plaintiff on an impermissible basis. Judge Quist further concluded there was no liability under Title VI because there was no evidence of discrimination. Finally Judge Quist determined Plaintiff's **[*5]** state law claims were without merit.

*B. The Appeal*

Plaintiff timely appealed. In his reply brief before the Court of Appeals, Plaintiff alleged that the district court's summary judgment decision was "based on the defendants fraud and Fraud upon the court, law to the contrary." (Appellant Reply Br. 15, *Kim v. Ionia*, No. 13-2084 (6th Cir. Jan. 6, 2014 (verbatim quotation)). In a decision dated April 29, 2014, the Court of Appeals affirmed the district court's decision. It declined to consider Plaintiff's argument of fraud because it was improperly raised for the first time in a reply brief. The Court of Appeals did consider, however, Plaintiff's other arguments that the district court should have remanded the case to State Court:

> Kim also argues that the district court erred in denying his motion to remand the case to state court. He asserts that the instant civil action

_____

one of the attorneys who represented the defendants in that action. Defendant Otis is proceeding separately from the Kim I defendants in this case, though the motions and briefs largely overlap.

constituted an appeal of his criminal proceedings that should not have been removed to the district court. However, this assertion is belied by the record.

Kim also contends that the district court lacked subject-matter jurisdiction because the defendants failed to attach all of the copies of the summonses that had been **[*6]** served upon them to their notice of removal. A defendant who wishes to remove a civil action from state court must file in the district court a notice of removal, "together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." *28 U.S.C. § 1446(a)*. We review de novo the district court's determination of subject-matter jurisdiction and the denial of a motion to remand. *Eastman v. Marine Mech. Corp., 438 F.3d 544, 549 (6th Cir. 2006)*. Where a defect in removal is procedural, rather than jurisdictional, remand is not required. *Grudzinski v. Staren, 87 F. App'x 508, 512 (6th Cir. 2004)*. A defendant's omission of a summons from a joint notice of removal is a minor procedural defect that is curable, either before or after the expiration of the thirty-day period for removal. *Countryman v. Farmers Ins. Exch., 639 F.3d 1270, 1273 (10th Cir. 2011)*. Accordingly, Kim has not demonstrated that the district court erred in denying his motion for remand on this basis.

*Kim v. Ionia*, No. 13-2084, at 4 (6th Cir. Apr. 29, 2014).

The Court of Appeals subsequently denied Plaintiff's petition for rehearing *en banc*.

*C. Further District Court Proceedings*

The Court of Appeals' mandate issued on December 3, 2014. (*Kim I*, ECF No. 64). On December 19, 2014, Plaintiff returned to the district court where he filed the first attempt in a lengthy campaign seeking to overturn the district court's summary judgment decision. None **[*7]** of the efforts were successful.

Plaintiff first filed a Motion for Relief from Judgment. (*Kim I*, ECF No. 65). In his motion, Plaintiff alleged, verbatim, that he "has been shown this Court and Court of Appeals that the district judge and Court of appeal judges were *intrinsic fraud* falsely chosen entered judgment (order) without *ANY* addressing extrinsic fraud, cause of Criminal Appeal; State Criminal Notice of Appeals from SENTENCE State 64-A District Criminal court." (*Kim I*, ECF No. 65, PageID.496). Judge

Quist denied Plaintiff's motion in an Order dated December 23, 2014:

> Although Plaintiff's allegations are disjointed and difficult to decipher, it appears that Plaintiff is arguing that the Court's prior rulings were incorrect—that the Court should have remanded the case to state court and that the Court's prior summary judgment rulings were erroneous. Such arguments provide no relief from judgment, especially because the Sixth Circuit has already affirmed the judgment. In addition, Plaintiff seems to argue that the Court should not have allowed Defendants to remove the state criminal cases to this Court, but that is not what occurred. Rather, Defendants removed Plaintiff's civil case **[*8]** to this Court.
>
> As for fraud, although Plaintiff makes numerous conclusory allegations that Defendants and their counsel committed some type of fraud, he fails to show what the fraud was or how the Court was misled by such fraud. Plaintiff also cites several criminal and civil statutes, *e.g.*, *18 U.S.C. § 1621(2)* (perjury) and *28 U.S.C. § 1655* (lien enforcement), but those statutes have no bearing on this case or Plaintiff's motion.

(*Kim I*, ECF No. 68, PageID.532-533).

Plaintiff moved for reconsideration of that decision (*Kim I*, ECF No. 69). The Court denied the motion in an Order dated February 4, 2015. (*Kim I*, ECF No. 71). Plaintiff filed an appeal, but on June 3, 2016, the Court of Appeals dismissed the appeal for want of prosecution. *Kim v. Ionia*, No. 15-1178 (6th Cir. June 3, 2016).

More than twenty months later, on March 1, 2018, Plaintiff filed a motion for relief from judgment under *Fed. R. Civ. P. 60(b)(6)* in the district court. (*Kim I*, ECF No. 78). Like his earlier motion for reconsideration, Plaintiff largely rehashed arguments that were previously considered and rejected both by the district court and the Court of Appeals. On this basis, the district court denied Plaintiff's motion in an Order dated March 19, 2018. (*Kim I*, ECF No. 80). **[*9]** Over two months later, on June 4, 2018, Plaintiff filed a notice of appeal. (*Kim I*, ECF No. 81). On July 18, 2018, the Court of Appeals dismissed the appeal as untimely. *Kim v. Ionia*, No. 18-1650 (6th Cir. July 19, 2018).

Thereafter Plaintiff again sought to overturn the district court's decision in a second *Rule 60(b)(6)* motion dated August 15, 2018. (*Kim I*, ECF No. 85). Judge Quist

2021 U.S. Dist. LEXIS 217823, *9

denied Plaintiff's motion on August 20, 2018. (*Kim I*, ECF No. 87). Plaintiff appealed that motion and also sought to proceed *in forma pauperis* on appeal. Judge Quist denied the *ifp* motion in a decision dated October 11, 2018 "because his appeal is frivolous." (*Kim I*, ECF No. 94, PageID.701). Plaintiff moved to reconsider that denial (*Kim I*, ECF No. 95) which Judge Quist denied. (*Kim I*, ECF No. 97). The Court of Appeals also denied Plaintiff leave to proceed *in forma pauperis* and subsequently dismissed the appeal on February 15, 2019, for want of prosecution after Plaintiff failed to pay the filing fee. *Kim v. Ionia*, No. 18-1974 (6th Cir. Feb. 15, 2019).

*2. Kim II - Plaintiff Files A Snowballing Lawsuit in the Eastern District of Michigan*

On February 21, 2019—less than a week after the Court of Appeals had denied Plaintiff's latest appeal in *Kim I*—Plaintiff filed a new lawsuit, this time in the Eastern District of Michigan. **[\*10]**  Plaintiff's Complaint named the *Kim I* defendants as well as their attorney, David Otis, as defendants. *Kim v. Ionia*, No. 5:19-cv-10524 (E.D. Mich. filed Feb. 21, 2019) (hereinafter "*Kim II*"). Plaintiff's Complaint spanned over 100 pages and, in addition to raising the claims he lost on in *Kim I*, Plaintiff added a new claim that the defendants violated *Federal Rule of Civil Procedure 9(b)* "constituting fraud." In a Statement of Claim, Plaintiff wrote "the defendants are made a case law that defendants have a right removed to Federal Court when Defendans failed to answer to complaint within 21 days state court." (*Kim II*, ECF No. 1, PageID.5) (verbatim quote).

Plaintiff was granted permission to proceed *in forma pauperis*. On February 27, 2019, the Honorable Judith Levy screened Plaintiff's Complaint under *28 U.S.C. § 1915(e)(2)*. After reviewing the Complaint, Judge Levy determined that Plaintiff was:

> attempting to relitigate issues from a case he extensively litigated before the U.S. District Court for the District of Western Michigan (*See* Case No. 12-01195). Although the complaint is not clearly delineated, many of the discernable issues are collaterally estopped. For instance, his requested relief under *Rule 60(b)* has been denied twice by the Western **[\*11]** District. (W.D. Mich. No. 12-01195, Dkts. 80, 87.) Likewise, the Western District held that removal was proper. (*Id.* Dkt. 98-1.) Moreover, to the extent his claims are not estopped or otherwise improperly before this Court, the

complaint does not state a claim upon which relief can be granted.

(*Kim II*, ECF No. 4, PageID.111).[3]

Judge Levy proceeded to dismiss the case. Plaintiff moved to reconsider and for an entry of default against the Defendants. (*Kim II*, ECF Nos. 5, 8). He argued, as he had claimed in his *Kim II* Complaint and extensively in the post-decision proceedings in *Kim I*, that the defendants had committed some unspecified act of fraud. The removal of *Kim I* had been improper, he said, because the defendants defaulted in the State Court before they ever removed *Kim I* to Federal Court. On April 2, 2019, Judge Levy denied Plaintiff's motion for reconsideration. (*Kim II*, ECF No. 7). Plaintiff's request for default was denied since the case was already closed. (*Kim II*, ECF No. 9).

Plaintiff appealed Judge Levy's dismissal. On September 17, 2019, the Sixth Circuit Court of Appeals affirmed Judge Levy's decision:

> We agree with the district court that Kim failed to state a claim. **[\*12]**  *Rule 9(b)* provides that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." *Rule 9(b)* is a pleading requirement; it does not create a federal cause of action for fraud. Kim twice cited the perjury statue, *18 U.S.C. § 1621*, but that criminal statute does not create a private right of action either. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 US 164, 190, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994)* ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone . . . ."). This leaves Kim with no leg to stand on so we must dismiss.

*Kim v. Ionia*, No. 19-1389 (6th Cir. Sept. 17, 2019).

Thereafter Plaintiff filed a petition for a writ of certiorari from the United States Supreme Court. On June 9, 2020, the United States Supreme Court denied Plaintiff's petition. (*Kim II*, ECF No. 15).

---

[3] Plaintiff seizes on the phrase "his claims are not estopped" as somehow demonstrating that Judge Levy determined Plaintiff's claims are not collaterally estopped. (ECF No. 59, PageID.653). This assertion is belied by a complete reading of Judge Levy's decision that clearly shows Judge Levy found Plaintiff's claims *were* collaterally estopped and simply added that to the extent there was anything in the margins that was not estopped, Plaintiff failed to state a claim.

2021 U.S. Dist. LEXIS 217823, *12

### 3. Kim III - The Instant Case

Two months after the United States Supreme Court denied Plaintiff's petition for a writ of certiorari, Plaintiff filed a new lawsuit naming the Kim III defendants. Plaintiff again initiated the suit in the Eastern District of Michigan. (ECF No. 1). This time, in an Order dated August 31, 2020, the Honorable David Lawson determined that venue was improper in the Eastern District and ordered the matter transferred to this Court. (ECF No. 3).

### A. Allegations in Plaintiff's [*13] Complaint

The Complaint in *Kim III* repackages the claims he raised in *Kim I* and *Kim II* in six counts of alleged Racketeering Influenced and Corrupt Organizations Act ("RICO") violations and one count of an asserted violation of the Full Faith and Credit statute of *28 U.S.C. § 1738*. More specifically, in his Complaint Plaintiff again asserts that his State Court Complaint in *Kim I* constituted an appeal of the criminal proceedings related to the traffic stop and should not have been removed. (*Kim III* Compl. ¶ 10, ECF No. 1, PageID.6). He further contends that the appeal of his case came about only after he had obtained defaults against the Defendants, and in conclusory fashion asserts that this is conduct which violates RICO, *18 U.S.C. § 1962*. (*Id.* at ¶ 11). The failure of the courts to recognize the State Court default, he further alleges, amounts to a violation of the Full Faith and Credit statute, *28 U.S.C. § 1738*.

### B. Procedural History

Following Judge Lawson's transfer order Plaintiff's Complaint was received by this Court on September 1, 2020 and assigned to the undersigned. Thereafter Plaintiff obtained defaults against the defendants. On October 15, 2020, the defendants moved to set aside the defaults that had been entered by [*14] the Clerk of Court on the grounds that service had been improper and that good cause existed to set aside the defaults. (ECF Nos. 30, 34). The Court granted the motions to set aside default in an Order dated October 27, 2020. (ECF No. 40).

On November 2, 2020 and November 17, 2020, Defendants moved to dismiss this case under *Rule 12(b)(6)* for failure to state a claim. (ECF No. 41, 51).[4] Plaintiff also filed a motion for summary judgment. (ECF No. 46). Defendants have also moved for sanctions under *Rule 11*. (ECF Nos. 64, 73). All motions have been fully briefed and are ready for decision.

### LEGAL STANDARDS

The Federal Rules provide that a cause of action may be dismissed for "failure to state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6)*. To survive a *Rule 12(b)(6)* motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (internal quotation marks omitted). Put differently, if plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference [*15] that the defendant is liable for the misconduct alleged." *Iqbal, 556 U.S. at 678*. In determining whether a claim has

---

[4] Plaintiff says the motions must be denied for several procedural reasons. First, he says Defendants failed to respond to his complaint and his motion for summary judgment. (ECF No. 59, PageID.668-669). But Defendants did respond. In its October 27, 2020 Order setting aside default, this Court ordered Defendants to answer or otherwise respond to Plaintiff's Complaint within 21 days of the date of the Order. (ECF No. 40, PageID.181). Defendants did so when they filed their motions to dismiss. Defendants also have responded in opposition to Plaintiff's motion for summary judgment. (ECF No. 48, 55). Next, Plaintiff says Defendants failed to comply with *Rule 12(e)* by filing their motions while his motion for summary judgment was pending. (ECF No. 59, PageID.656-657). This argument is nonsensical. First, the *Kim I* Defendants motion was docketed the same day as Plaintiff's motion. (compare ECF No. 41 with ECF No. 46). Moreover, *Rule 12(e)* relates to motions for a more definite statement, not motions to dismiss. No motion for a more definite statement has been made in this case. Finally, Plaintiff argues the motions to dismiss failed to comply with *W.D. Mich. LCivR 7.1(d)* because Defendants did not seek his concurrence beforehand. Both motions (ECF Nos. 41 and 51) state that Defendants sought concurrence from Plaintiff on October 30, 2020. Plaintiff states that he received no communications from Defendants in this regard. (ECF No. 59, PageID.658). Plaintiff's unsworn assertions are insufficient to demonstrate Defendants failed to comply with the local rules.

facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008)*. Courts, however, do not have to accept "conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc., 650 F.3d 1046, 1050 (6th Cir. 2011)*. Even after accepting all factual allegations as true, for a claim to be valid, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007)* (internal citations omitted).

The more rigorous pleading standards of *Rule 9(b)* apply to Plaintiff's claims based on fraud. Under *Rule 9(b)*, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To allege fraud with particularity, "a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." **[*16]** *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 643 (6th Cir. 2003)* (internal quotation marks and citation omitted).

## DISCUSSION

### 1. Defense Motions to Dismiss & Plaintiff's Motion for Summary Judgment

Defendants move to dismiss Plaintiff's Complaint, with prejudice, on the grounds that the claims within it are barred by the doctrine of claim preclusion, time barred, and fail on the merits. There is no federal cause of action, they further state, on Plaintiff's claim under the Full Faith and Credit statute. After careful review of all matters of record, the Court determines that Plaintiff's RICO claims are barred by res judicata, time-barred, and fail on the merits. Plaintiff further has no cause of action under the Full Faith and Credit statute. The Court also finds that this record supports a modification of Plaintiff's restricted filer status as well as a monetary **_sanction_**, though not to the extent sought by

Defendants.[5]

*A. Plaintiff's RICO Claims in Counts I, III, IV, V, and VI Are Barred By the Doctrine of Claim Preclusion.*

Plaintiff's RICO claims are barred by res judicata. As the Supreme Court discussed in *Migra v. Warren City Sch. Dist. Bd. of Ed., 365 U.S. 75 (1984)*:

> Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion **[*17]** refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. . . . This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.

*Id at 77 n.1*. The doctrine of claim preclusion provides that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 582 (6th Cir. 1994)*; *see Kremer v. Chem. Constr. Corp., 456 U.S. 461, 467 n.6, 102 S. Ct. 1883,*

---

[5] Plaintiff has also filed a motion for summary judgment. The motion, as with Plaintiff's other pleadings, is difficult to decipher. He lays out his version of the history of his case, including the events of *Kim I* and *Kim II*. In conclusory, fragmented, and rambling statements Plaintiff alleges there was widespread fraud throughout all three lawsuits. He complains, in the main, that Defendants improperly removed his criminal appeal in State Court to Federal Court and, furthermore, the removal was improper after he had already obtained defaults against the defendants in the State Court. As set out above, these two assertions form the core complaint of all three lawsuits. To the extent Plaintiff has lost (repeatedly) on these assertions, he contends the defendants engaged in fraud to convince the courts to issue adverse rulings. What Plaintiff alleges is nothing new. He only seeks to repackage the claims under a new cause of action that he hopes will be more successful than the last. Plaintiff's motion is without merit, for the same reasons the Court concludes the defense motions should be granted and this case is dismissed.

2021 U.S. Dist. LEXIS 217823, *17

72 L. Ed. 2d 262 (1982). Claim preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980).* To apply the doctrine of claim preclusion, the reviewing court must find that:

> (1) there is a final decision on the merits in the first action by a court of competent jurisdiction; **[*18]** (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is an identity of claims between the first and second actions.

*Heike v. Central Michigan Univ. Bd. of Trustee, 573 F. App'x 476, 480 (6th Cir. 2014)* (citing *Sanders Confectionary Prods., Inc. v. Heller Fin. Inc., 973 F.2d 474, 480 (6th Cir. 1992)*). Defendants bear the burden on establishing this affirmative defense. *Id.*

All four elements of claim preclusion are present here, and they prevent Plaintiff from proceeding with his RICO claims. There was, first of all, a final adjudication on the merits when Judge Quist granted the defendant's motion for summary judgment in *Kim I* and dismissed the case. *See Heike, 573 F. App'x at 480* (citing *Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 320, 324 (6th Cir. 1990)* (stating a summary judgment decision operates as an adjudication on the merits)). Plaintiff also received decisions on the merits when Judge Quist denied Plaintiff's *Rule 60* motions in *Kim I* and when Judge Levy found Plaintiff failed to state a claim in *Kim II*.

The previous lawsuits were also between the same parties and their privies. Plaintiff and Defendants City of Ionia, Eppler, Thomas, Skorka, and Anderson have been parties to this case throughout *Kim I, Kim II* and this case. The only additional defendant in this action is the lawyer who represented **[*19]** the defendants in *Kim I* - Defendant Otis, though he too was a named Defendant in Kim *II*. In any event, this element is met because Defendant Otis is a privy of the *Kim I* defendants. *See Kimball v. Orlans Assocs. P.C., 651 F. App'x 477, 481 (6th Cir. 2016); see also Plotner v. AT & T Corp., 244 F.3d 1161, 1169 (10th Cir. 2000).*

With respect to the third and fourth claim preclusion elements, the RICO claims in the instant complaint could have and should have been brought in the earlier actions. Plaintiff appears to suggest claim preclusion

does not apply because the claims in this case are different than those brought in *Kim I* and *Kim II*. (ECF No. 59, PageID.659-660). This is not the case, however, as claim preclusion operates to preclude those claims that could have been brought in earlier actions. Here the underlying premise that makes up Plaintiff's RICO claims relates to the removal of his case to this Court in *Kim I*. These are claims that have permeated the litigation from the beginning, and clearly amount to an identity of the facts creating the asserted rights of action. *See Heike, 573 F. App'x at 473* ("Causes of action share an identity where the facts and events creating the right of action and the evidence necessary to sustain each claim are the same). The RICO claims premised on Defendants' removal, furthermore, certainly could **[*20]** have been, but were not, raised when Plaintiff filed his Amended Complaint in *Kim I*. The RICO claims also could have been, but were not, raised in his Complaint in *Kim II* after Plaintiff had alleged in his *Kim I* appeal that the removal was the result of some sort of fraud. In general, "a plaintiff should have litigated two claims in his or her first suit, and thus may not litigate the second claim later where . . . the two claims 'arose from the same transaction, or series of transactions.'" *Heike, 573 F. App'x at 482* (quoting *Rawe v. Liberty Mut. Fire Ins. Co., 462 F.3d 521, 529 (6th Cir. 2006)*). This lawsuit, therefore, stems from the same factual predicate as *Kim I* and *Kim II* and meets the requirements for the third and fourth elements of claim preclusion.

All four elements of claim preclusion having been met, the Court concludes that claim preclusion applies to Plaintiff's RICO claims, and that Defendants are entitled to dismissal of those claims as barred by res judicata.

*B. Even if Plaintiff's RICO Claims are not Barred by Claim Preclusion, They are Time-Barred.*

Defendants contend that even if Plaintiff's RICO claims are not precluded by claim preclusion, they are time barred. The Court agrees.

"Congress did not expressly impose a statute of limitations on civil RICO actions, **[*21]** but the Supreme Court has held that such claims are subject to a four-year statute of limitations." *Torres v. Vitale, No. 1:18-cv-766, 2019 U.S. Dist. LEXIS 233858, 2019 WL 10744943, at *5 (W.D. Mich. Apr. 19, 2019)* (citing *Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156, 107 S. Ct. 2759, 97 L. Ed. 2d 121 (1987)), aff'd in relevant part, 954 F.3d 866 (6th Cir.*

2021 U.S. Dist. LEXIS 217823, *21

*2020)*. "The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation." *Sims v. Ohio Cas. Ins. Co., 151 F. App'x 433, 435 (6th Cir. 2005)* (citing *Rotella v. Wood, 528 U.S. 549, 553-55, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000)*).

Plaintiff's RICO claims are premised on the Defendants removal of *Kim I* to federal court on October 31, 2012. He says it was an improper removal of a criminal case; that removal was improper because he had filed an amended complaint in the state court; and it was also improper because he had obtained a default in state court. As numerous decisions have indicated, these arguments are meritless. But they are also time-barred for purposes of Plaintiff's RICO claims. These events occurred more than four years before the August 13, 2020 date of the Complaint in this action. Plaintiff certainly knew about the removal in November 2012 when he filed an Amended Complaint in *Kim I*. He also knew about these actions when he argued they amounted to fraud in his reply brief to the Court of Appeals on January 6, 2014. Both of these dates are outside the four-year window.

In response, **[*22]** Plaintiff asserts he has pointed to injuries that are within the four-year window. (ECF No. 59, PageID.661-662). Plaintiff specifically relies on decisions he lost in state and federal court on issues related to the traffic stop that triggered this whole cascade of litigation. It is true that some of these decisions came down within the four-year window, but those decisions do not in themselves create a new RICO cause of action. They are not the predicate act of these defendants at all; rather, they are decisions of various state and federal tribunals ruling against Plaintiff. Adverse court decisions may or may not amount to an injury for *Rule 9* purposes. But Court decisions are not acts of the Defendants, and they certainly do not amount to predicate acts within the limitations period for the purposes of RICO. In vague and conclusory fashion Plaintiff states that these decisions were somehow reached as a result of fraud on the part of defendants and suggests that someone in the courts may have been working with the Defendants to defeat Plaintiff's claims, but he does not allege with particularity the circumstances constituting the fraud. There is, then, nothing within the four-year limitation **[*23]** period that pleads a specific act constituting a RICO violation.

Plaintiff's RICO claims, therefore, are time-barred.

## C. Plaintiff's RICO Claims Also Fail on the Merits

Finally, Plaintiff's RICO claims fail on the merits. Under *18 U.S.C. § 1962(c)*, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Put differently, a violation of this statute requires: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.I. v. Imrex Co., 473 U.S. 479, 496 (1985)*. Plaintiff must allege each of these elements to state a claim. *Heinrich v. Waiting Angels Adoption Services, Inc., 668 F.3d 393, 404 (6th Cir. 2012)*. "Racketeering activity consists of acts which are indictable under a number of federal statutes listed in *18 U.S.C. § 1961(1)(B)*," including, among other things, mail fraud under *18 U.S.C. § 1341*. *Id.* To show a pattern of racketeering activity, a plaintiff must plead, *inter alia*, at least two predicate acts occurring within a ten-year period. *18 U.S.C. § 1961(5)*.

The RICO claims in Plaintiff's Complaint fail to state a claim for numerous reasons. In the main, it is for the same reason that **[*24]** Plaintiff's post-defense efforts in *Kim I* failed. He complains of fraud, but never alleges what the fraud is. Indeed, most of what Plaintiff complains about is the reasoning of the decisions of the district courts and Court of Appeals in *Kim I* and *Kim II* with very little relating to any action on the part of the Defendants. He states, for example, that the courts (not the defendants) failed to follow the Rules of Civil Procedure and various statutes. *See, e.g.*, Compl. ¶ 3, ECF No. 1, PageID.3 (alleging that the court in *Kim I* failed to follow the dictates of *Rule 55*, as well as *28 U.S.C. §§ 1331*, *1446(b)(3)*, *1738*). Later he complains that it was the district court and the Sixth Circuit Court of Appeals (again, not the defendants) that engaged in racketeering activity through their adverse decisions. *See* Compl. ¶ 27, ECF No. 1, PageID.19-20 ("The *Kim I* Judge and [Sixth Circuit] panel's decision was a "pattern of racketeering activity."). Plaintiff is simply seeking to overturn the decision of the district court in *Kim I*, a decision that was affirmed by the Court of Appeals. *See, e.g.*, Compl. ¶ 16, ECF No. 1, PageID.13 (stating the summary judgment decision in *Kim I* was "manifest injustice and the rulings Conflict with **[*25]** [various rules and statutes]."). Even under the liberal review afforded *__pro se__* parties, all this falls far short of alleging defendants engaged in conduct of an enterprise though a pattern of racketeering activity. Plaintiff has simply

2021 U.S. Dist. LEXIS 217823, *25

failed to allege (much less clear the plausibility threshold) anything of the sort.[6]

Even assuming Plaintiff has established the necessary predicate acts, he has failed to establish a pattern of racketeering necessary to state a RICO claim. "Although necessary to sustain a RICO claim, the pleading of two predicate acts may not be sufficient because *§ 1961(5)*

_____

[6] Plaintiff does not even allege which of those statutes listed in *18 U.S.C. § 1961(B)* he contends amounts to racketeering activity by Defendants. Defendants surmise that Plaintiff might possibly point toward mail fraud in *18 U.S.C. § 1341* and Plaintiff responds to this argument in his response to the defense motions. To the extent this means Plaintiff depends upon mail and wire fraud as the predicate racketeering activity, he utterly fails to allege a *Twombly* plausible claim. "Mail fraud consists of (1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme." *Heinrich, 668 F.3d at 404* (internal quotation marks omitted). The elements of wire fraud mirror mail fraud "except that one must use the wires in furtherance of the scheme to defraud." *Id.* (internal quotation marks omitted). A "scheme to defraud" means "any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Id.* (internal quotation marks omitted). It is also necessary to demonstrate *scienter* to establish a scheme to defraud. *Id.* The scienter requirement "is satisfied by showing the defendant acted either with a specific intent to defraud or with recklessness with respect to potentially misleading information." *Id.* To satisfy the heightened pleading requirements of *Rule 9(b)* when pleading predicate acts of mail or wire fraud, "a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (internal quotation marks omitted). "[T]o allege a valid RICO claim . . . a plaintiff must show not only that the predicate act was a 'but for' cause of plaintiff's injuries, but also that it was a proximate cause." *Id. at 405* (internal quotation marks omitted).

Plaintiff's Complaint does not satisfy the pleading requirements of *Rule 9(b)* necessary to show a predicate act of mail or wire fraud. Plaintiff complains about fraud, to be sure, but he does not identify a statement, the speaker, where or when the statement was made, or explain how the statement is fraudulent. At most, Plaintiff alleges some sort of fraud in the Defendants' arguments to the district court and Sixth Circuit Court of Appeals in *Kim I* and *Kim II* and contends that every adverse decision was the result of the Defendant's fraud. This is nowhere close to being specific enough. Plaintiff has not alleged a predicate act necessary to establish a claim under RICO, whether under the mail or wire fraud statutes, or any other qualifying statute.

'assumes that there is something to a RICO pattern *beyond* the number of predicate acts involved.'" *Moon v. Harrison Piping Supply, 465 F.3d 719, 724 (6th Cir. 2006)* (quoting *H.J. Inc. v. Northwestern Bell Tele. Co., 492 U.S. 229, 238 (1989)* (emphasis in original)). The term "pattern" requires "continuity plus relationship," two analytically distinct prongs. *Id.* (internal quotation marks omitted). To establish relatedness, a plaintiff must allege predicate acts that "have the same or similar purpose, results, participants, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc., 492 U.S. at 240.* Continuity refers "either to a closed period of repeated [*26] conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.*

Plaintiff has pleaded neither a closed-ended period of continuity nor past conduct that by its nature projects into the future. As in the *Moon* case, all of the predicate acts Plaintiff allege Defendants (not the courts) engaged in "were keyed to Defendants' single objective" of removing Plaintiff's State Court case to this Court. Like the plaintiff in *Moon*, Plaintiff alleges no other scheme or purpose, and he alleges no facts alleging that the scheme continued beyond this date.[7] "In circumstances such as these, the purported racketeering activity does not bear the markings of the 'long-term criminal conduct' about which 'Congress was concerned' when it enacted RICO." *Id. at 726*; *see also Vemco, Inc. v. Camardella, 23 F.3d 129, 134-35 (6th Cir. 1994)* (holding that a single scheme emanating from a dispute over an ordinary construction contract did not satisfy the continuing requirement under RICO). If Plaintiff's allegations were enough to state a RICO pattern, every individual challenge to a defendant's removal of a state court case to federal court, even if ultimately improper, could be re-cast as a RICO claim, and this is not what the RICO statute covers.[8]

_____

[7] To be sure Plaintiff alleges fraud beyond the removal in October 2012. But the allegations as to the Defendants are conclusory, and they lack any specificity. To the extent Plaintiff claims fraud is evident from the decisions of the courts, he merely suggests that the courts were repeatedly wrong and not that there was any continuing scheme by the defendants.

[8] To the extent Plaintiff alleges a conspiracy under RICO, his claim also fails. Given that Plaintiff cannot prove an underlying RICO violation, it follows that he has not alleged a RICO conspiracy. *See [*27] Am. BioCare Inc. v. Howard & Howard Attorneys PLLC, 702 F. App'x 416, 423 (6th Cir. 2017)* ("To prove a conspiracy to violate RICO, a plaintiff must allege all

2021 U.S. Dist. LEXIS 217823, *27

*D. Plaintiff Has No Cause of Action for a Claim Under the Full Faith and Credit Statute*

The *Full Faith and Credit Act, 28 U.S.C. § 1738*, requires a court to give preclusive effect to state court judgments. In Count II, Plaintiff alleges Defendants violated this statute when the Court in *Kim I* failed to recognize the default he obtained in his state court case. Even assuming the default in state court qualifies as a "judgment," and that default in state court entered before removal, as Plaintiff says,[9] Plaintiff simply has no cause of action under this statute. *See Thompson v. Thompson, 484 U.S. 174, 182, 108 S. Ct. 513, 98 L. Ed. 2d 512 (1988)* ("[T]he Full Faith and Credit Clause, in either its constitutional or statutory incarnations, does not give rise to an implied federal cause of action."). The defense is therefore, entitled to dismissal of this count as well.

For all these reasons, the Court determines that the defendants are entitled to dismissal of all counts in Plaintiff's Complaint for failure to state a claim

*2. The Defense Motions for Rule 11 Sanctions*

Also pending before the Court are the two defense motions for *Rule 11* sanctions. (ECF Nos. 64 & 73). Plaintiff has responded in opposition (ECF No. 77) and Defendants have replied (ECF Nos. 79 & 82). Defendants seek an order requiring Plaintiff to pay their actual attorney's fees as **[*28]** well as a modification of Plaintiff's restricted filing status to require pre-service review of any future lawsuits based on the underlying facts of this case

*Fed. R. Civ. P. 11(b)* requires an attorney to conduct a reasonable inquiry before presenting a pleading, written motion or other paper to the court, to confirm, among other things, that the "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and that the "factual contentions have evidentiary support or, if specifically so identified,

will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Fed. R. Civ. P. 11(b)*. "[T]he central purpose of *Rule 11* is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)*. The rule "affords the district court the discretion to award sanctions when a party submits to the court pleadings, motions, or papers that are presented for an improper purpose, are not warranted by existing law or a nonfrivolous extension of the law, or if the allegations and factual contentions do not have evidentiary support." *First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 510 (6th Cir. 2002)*.

Like attorneys, **pro se** litigants such as Plaintiff "must comply with *Rule 11* and make a reasonable inquiry **[*29]** as to whether a complaint is well-grounded and warranted by existing law." *Stevens v. Mooney, 81 F.3d 161, at *1 (6th Cir. 1996)*. However, "Plaintiff's **pro se** status and the absence of legal advice are appropriate factors to be considered as special circumstances when determining if *Rule 11* has been violated." *Booker v. Buckely, 810 F.2d 199 (Table), 1986 WL 18396, at *1 (6th Cir. 1986)*. As movants, the defendants have the burden of demonstrating that Plaintiff engaged in "objectively unreasonable conduct." *First Bank of Marietta, 307 F.3d at 510*.

As set out above, this is Plaintiff's third federal lawsuit based on the same set of underlying events, and the latest in quite literally dozens of attempts to get around court decisions that have found his arguments to be without merit. Though the statutes he cites may be new, and his arguments updated to encompass more recent events, this attempt is almost identical to the attempts he has made and lost before this Court and the Court of Appeals. Plaintiff is clearly on notice that his arguments underlying this case—that his State Court suit was improperly removed—are not well grounded in fact or based on a plausible view of the law. The Court, and Defendants, should not have to repeatedly deal with Plaintiff's losing arguments. The Court acknowledges Plaintiff's **pro se** status, and his clear difficulty with the **[*30]** English language. Still, there appears to be no way Plaintiff could be presenting the claim in good faith and in compliance with *Rule 11*.[10] Parties participating

---

the elements of a RICO action plus one additional element: an illicit agreement to violate the substantive RICO provision.") (internal quotations marks and citation omitted).

[9] Citing to state court records, Defendants state that default was not entered in state court until *after* they had removed this case and, thus, the default was a nonevent given the federal removal statute.

---

[10] For his part, Plaintiff suggests that Defendants failed to comply with *Rule 11*'s safe harbor provisions by filing the motion when the dispositive motions were still pending. (ECF No. 77, PageID.796). He says the *Rule 11* motion cannot

2021 U.S. Dist. LEXIS 217823, *30

in a case *pro se* are still obligated to follow court rules, orders, and process. Plaintiff's continued pursuit of issues already decided, the filing of multiple meritless motions, and his repeated disregard for Court rules amounts to such an abuse.

As a *sanction*, Defendants request their actual attorneys fees and an order modifying Plaintiff's restricted filer status to require pre-filing review of any lawsuits based on *Kim I*. The Court agrees a modification to Plaintiff's restricted filer status is called for. The Court is presently satisfied that this, along with a lesser monetary *sanction* consisting of $3,000 total, payable to each Defendant in the amount of $500.00, will be sufficient to deter Plaintiff. As set out in a recent decision from this district:

> In *Jackson v. Law Firm, 875 F.2d 1224, 1229-30 (6th Cir. 1989)*, the Sixth Circuit set forth four factors to be considered when crafting sanctions under *Rule 11*. *Danvers v. Danvers, 959 F.2d 601, 605 (6th Cir. 1992)*. The first and most important factor is deterrence. *Id*. Second, the sanctions are meant to compensate the party receiving the award for expenses **[*31]** incurred in litigating the improperly filed suit and the sanctions motion; however, these first two factors must be balanced. *Id*. Because deterrence is the primary goal, the minimum necessary to deter the sanctioned party is the proper award, even if this amount does not fully compensate the moving party. *Id*. "The central purpose of *Rule 11* sanctions is deterrence, not compensation." *Williams v. Supreme Court of Kentucky, 914 F.2d 259, at *3 (6th Cir. 1990)*. The third factor is mitigation. *Danvers, supra.* The moving party must mitigate its expenses by not expending useless effort on frivolous actions. *Id*. Finally, there must be a consideration of the sanctioned party's ability to pay. The idea is not to

---

substitute for an untimely motion to dismiss. But Defendants' motions to dismiss are not untimely, and there is no requirement that a *Rule 11* motion be held in reserve until a court has decided the dispositive motions. Even if there was some flaw in the *Rule 11* process on this record (which there is not) the Court has inherent power to impose sanctions for conduct that abuses the judicial process. *Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)*. The litigation history laid out above, along with that summarized in the Court's May 10, 2018 Order originally placing Plaintiff on Restricted Filer status, make plain why a *sanction* is warranted. *See Kim v. Grand Valley State University*, No. 1:18-cv-107, ECF No. 20 (W.D. Mich. May 10, 2018).

bankrupt an attorney—or, as here, a *pro se* litigant—but to deter [him] from repeating the conduct prohibited by *Rule 11*.

*Mixon v. Bronson Health Care Group, Inc.*, No. 1:13-cv-843, ECF No. 127 (W.D. Mich. June 7, 2017) (Neff, J.).

Accordingly, to deter future frivolous filings, and to avoid needless litigation burden on defendants, the Court will impose a *sanction* upon Plaintiff under its inherent authority and *Rule 11(c)(4)* in the form of a $3,000.00 total penalty payable to each of the six defendants in the amount of $500.00. Defendants are relieved of their responsibility to answer any additional **[*32]** motion filed by Plaintiff in this case unless or until further order of the Court.

With respect to Plaintiff's restricted filer status, the Court's order under its inherent powers cannot completely foreclose a litigant from access to the court. *See Ortman v. Thomas, 99 F.3d 807, 811 (6th Cir. 1996)*. However, "[a] district court has the authority to issue an injunctive order to prevent prolific and vexatious litigants from filing pleadings without first meeting pre-filing restrictions. *Stewart v. Fleet Fin., 229 F.3d 1154 (6th Cir. 2000)*. The Court is satisfied that a modification of the May 10, 2018, placing Plaintiff on Restricted Filer Status is necessary. Accordingly, the Court will further order that Plaintiff's current Restricted Filer Status be modified to require screening of any further action Plaintiff may file relating to the subject matter of this case before service. Furthermore, any Complaint filed by Plaintiff touching in any way on the subject matter of this case will be subject to screening, regardless of whether Plaintiff has paid the filing fee. *See Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999)* (holding that a "district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to *Rule 12(b)(1) of the Federal Rules of Civil Procedure* when the allegations of a complaint are totally implausible, attenuated, unsubstantial, **[*33]** frivolous, devoid of merit, or no longer open to discussion."); *Tucker v. FBI Head Quarters, No. 19-13626, 2020 U.S. Dist. LEXIS 74954, 2020 WL 2059866 (E.D. Mich. Apr. 29, 2020)* (dismissing lawsuit as frivolous where the *pro se* plaintiff had paid the filing fee); *see also Ross v. Baron, 493 F. App'x 405, 406 (4th Cir. 2012)* ("[F]rivolous complaints are subject to dismissal pursuant to the inherent authority of the court, even when the filing fee has been paid.").

On the present record the Court determines that this

2021 U.S. Dist. LEXIS 217823, *33

restriction, combined with the monetary **_sanction_** the Court is imposing, is the minimum necessary to deter Plaintiff's frivolous filings. Further events, of course, may inform whether additional sanctions are warranted.

**CONCLUSION**

For all these reasons, the Court finds that Plaintiff's Complaint must be dismissed for failure to state a claim, and that Defendants have demonstrated a basis for sanctions. The Court will enter an Order that will deter Plaintiff's vexatious litigation, but will not eliminate his access to the Courts.

**ACCORDINGLY, IT IS ORDERED** that:

1. Defendants' Motions to Dismiss for Failure to State a Claim (ECF Nos. 41 and 51) are **GRANTED**.

2. Plaintiff's Motion for Summary Judgment (ECF No. 46) is **DENIED**.

3. Defendants' Motions for Sanctions (ECF Nos. 64 and 73) are **GRANTED** to the extent specified in this order.

4. Defendants **[*34]** are relieved of their responsibility to answer any additional motion filed by Plaintiff in this case unless or until further order of the Court.

5. Defendants are **AWARDED** attorney's fees in the amount of $3,000.00 as _Rule 11_ sanctions against Plaintiff, in favor of the following defendants in the listed amounts.

⊞ _Go to table1_
Payment to Defendants City of Ionia, Jason Eppler, Thomas Troy, Jennifer Skorka, and Bandon Anderson shall be sent to Attorney Bogren at his listed address:
    Michael S. Bogren
    Plunkett Cooney (Grand Rapids)
    333 Bridge St., NW, Ste. 530
    Grand Rapids, MI 49504
Payment to Defendant Otis shall be sent to Attorney Ashcraft at his listed address:
    Michael Patrick Ashcraft
    Plunkett Cooney (Bloomfield Hills)
    38505 Woodward Ave., Ste. 100
    Bloomfield Hills, MI 48304

6. The May 10, 2018 Order placing Plaintiff on Restricted Filer Status in _Kim v. Grand Valley State University_, Case No. 1:18-cv-107, ECF No. 20-1 (W.D. Mich. May 10, 2018) is **MODIFIED** as follows:

    A. Any Judicial Officer reviewing an application from Plaintiff to proceed _in forma pauperis_ under _28 U.S.C. § 1915(a)(1)_ may grant **[*35]** such an application only after first determining that the complaint survives screening under the standards of _28 U.S.C. § 1915(e)(2)_. No defendant named in any such complaint shall have an obligation to respond unless and until the Court authorizes service of the Complaint on that defendant and sets a deadline for response.

    B. Regardless of whether Plaintiff has paid the filing fee or been granted permission to proceed _in forma pauperis_, in any new action touching on or arising in any way from the same subject matter of _Kim v. Ionia_, Case No. 1:20-cv-843 (W.D. Mich.); _Kim v. Ionia_, No. 5:19-cv-10524 (E.D. Mich.) and _Kim v. Ionia_, Case No. 1:12-cv-1195 (W.D. Mich.) no summons shall be issued, and no service of process authorized, unless the Judicial Officer assigned to the case first enters an Order stating that the new filing survives screening under the standards of _28 U.S.C. § 1915(e)(2)_.
    C. Any future cases filed by Plaintiff shall be assigned to the undersigned under the related case rule of the Court.

7. This Order shall be forwarded to the Clerk of Court and treated as an Administrative Order governing assignment and handling of any future cases filed by Restricted Filer Gwanjun Kim.

8. This Order concludes the case. This **[*36]** case is **DISMISSED** with prejudice. A separate Judgment shall issue.

Dated: January 8, 2021

/s/ Robert J. Jonker

ROBERT J. JONKER

CHIEF UNITED STATES DISTRICT JUDGE

**JUDGMENT**

2021 U.S. Dist. LEXIS 217823, *36

In accordance with the Opinion and Order entered this day, Judgment is entered dismissing this case in favor of Defendants and against Plaintiff for failure to state a claim under *Rule 12(b)(6)*.

Dated: January 8, 2021

/s/ Robert J. Jonker

ROBERT J. JONKER

CHIEF    UNITED    STATES    DISTRICT    JUDGE

Emily Jenks

2021 U.S. Dist. LEXIS 217823, *36

**Table1** (*Return to related document text*)

|  |  |
|---|---|
| A. City of Ionia | $500.00 |
| B. Jason Eppler | $500.00 |
| C. Thomas Troy | $500.00 |
| D. Jennifer Skorka | $500.00 |
| E. Brandon Anderson | $500.00 |
| F. David K. Otis | $500.00 |

**Table1** (*Return to related document text*)

---

**End of Document**

Emily Jenks