UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OWEN W. BARNABY,

     Plaintiff,

                                            Hon. Robert J. Jonker

v.

                                            Case No. 1:22-cv-1146

MICHIGAN STATE GOVERNMENT,
et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION AND ORDER

     Pro se Plaintiff Owen Barnaby, a citizen of Georgia, has sued a plethora of defendants raising numerous claims concerning certain real property located in Niles Charter Township and the City of Benton Harbor, Berrien County, Michigan, that Barnaby once owned but lost more than a decade ago to foreclosure for nonpayment of property taxes. Presently before me are the following dispositive motions: (1) Former Governors Jennifer Granholm and Rick Snyder and Assistant Attorney General Kendell Asbenson's (the State Defendants) Motion to Dismiss Third Amended Complaint (ECF No. 116); (2) City of Benton Harbor's (the City) Motion to Dismiss (ECF No. 121); (3) Justice Clement, former Justice McCormack, Judge Gleicher, Judge Murray, and the Michigan Court of Appeals' (the Judicial Defendants) Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 150); (4) Niles Charter Township and Niles Charter Township Board of Trustees' (the Township Defendants) Motion to Dismiss for Lack of Jurisdiction and/or Motion for Judgment on the Pleadings (ECF No. 162); (5) Defendants Berrien County Government, Berrien County Board of Commissioners, Shelly Weich, Lora L. Freeling, Hon. Donna Howard, R. McKinley Elliott, Hon. Mabel J. Mayfield, Hon. Gary J.

Bruce, and Berrien County Trial Court's (County Defendants I) Motion to Dismiss for Insufficient Service of Process and, alternatively, for Failure to State a Claim Pursuant to Rule 12(b)(6) as to the Berrien County Trial Court (ECF No. 160); (6) Defendants Culberson, Witkowski, and McGovern's (County Defendants II) Motion to Dismiss Pursuant to Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 206); and (7) the Holmstrom Defendants' Rule 12(b)(6) Motion to Dismiss (ECF No. 195). Also before me are: (1) City of Benton Habor's Motion for Sanctions Under Fed. R. Civ. P. 11 (ECF No. 148); (2) Barnaby's Objection in Part to Order entered as ECF No. 140 (ECF No. 142); (3) Barnaby's Motion for Leave to File Fourth Amended Complaint (ECF No. 146); (4) Barnaby's Amended Request for Entry of a Default Judgment in the amount of $85,944.289.20 against Defendants Butzbaugh (deceased), Jarvis, Culberson, Witkowski, and McGovern (ECF No. 182); and (5) Barnaby's Motions for Leave to File Summonses Returned Executed/Issue Summons (ECF Nos. 189 and 199).

For the following reasons, pursuant to 28 U.S.C. § 636(b)(1), I recommend that the Court **GRANT** Defendants' motions to dismiss/for judgment on the pleadings. Although the County Defendants I (except for the Berrien County Trial Court) move to dismiss only on the ground of failure to timely serve, I recommend that Barnaby's claims against them, as well as his claims against Hon. Alfred Butzbaugh and Lori Jarvis (both deceased), be dismissed with prejudice for lack of jurisdiction under *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999). Thus, I recommend that Barnaby's Third Amended Complaint be **dismissed with prejudice**. I further recommend that the Court **GRANT** the City's motion for sanctions and/or exercise its inherent authority to place pre-filing restrictions on harassing and vexatious litigants by precluding Barnaby from filing any further action in this Court pertaining to the Berrien County parcels, the related Judgments of

Foreclosure concerning those parcels, or any previous action in this Court concerning those matters. Finally, I recommend that the Court **DENY** Barnaby's amended request for entry of default judgment.

In addition, pursuant to 28 U.S.C. § 636(b)(1)(a), I will **deny** Barnaby's motion for leave to file a Fourth Amended Complaint, **overrule** his objection, and **deny as moot** his remaining motions.

## I.  Background

### A.    The Foreclosure Proceedings

In July 2005, Barnaby purchased real property commonly known as 2116 S. 15th Street, Niles Township, Berrien County, Michigan, property tax number 11-14-0112-0011-17-4 (the Niles parcel) for $5,250.00 through the Berrien County Treasurer's tax foreclosure sale. Case No. 1:14-cv-1279 (2014 Case), ECF No. 125-1 at PageID.1518.[1] The Niles parcel was a vacant, rural parcel subject to four separate easements for installation and maintenance of gas pipelines, rendering the property not buildable. *Id.*, ECF No. 125-17 at PageID.1686; (ECF No. 51-8 at PageID.463.) At or around the same time, Barnaby also purchased a number of parcels through the tax foreclosure sale located in the City of Benton Harbor, Berrien County, Michigan (the Benton Harbor parcels). (ECF No. 36 at PageID.175.)

Barnaby failed to timely pay the 2007 property taxes on the Niles parcel, and on March 1, 2009, the property was forfeited to the County treasurer pursuant to the General Property Tax Act (GPTA). (ECF No. 51-12 at PageID.504.) On March 3, 2009, the Treasurer, Bret Witkowski,

---

[1] In considering a motion to dismiss, "a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (citing *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008)). Here, it is proper to take judicial notice of documents of record in Barnaby's previous cases in this Court.

completed a Certificate of Forfeiture of Real Property for the Niles parcel for non-payment of the 2007 property taxes, which was recorded in the Berrien County Register of Deeds on April 23, 2009. 2014 Case, ECF No. 125-1 at PageID.1523. The County subsequently filed a petition for a foreclosure judgment in the Berrien County Trial Court. On March 1, 2010, Hon. Alfred Butzbaugh held a hearing on the proposed Judgment of Foreclosure submitted by Witkowski. Although Witkowski was present at the hearing, the County's attorney failed to appear. *Id.*, ECF No. 89-16 at PageID.985. Due to unresolved issues raised by certain objectors, Judge Butzbaugh returned the proposed judgment to Witkowski with instructions to submit a revised judgment if the issues were resolved. *Id.* at PageID.985–86.

Subsequently, Witkowski prepared a Notice of Judgment of Foreclosure, which was recorded with the Berrien County Register of Deeds on May 26, 2010, incorrectly stating that Judge Butzbaugh had entered a Judgment of Foreclosure on March 1, 2010. *Id.*, ECF No. 125-1 at PageID.1525. In fact, Judge Butzbaugh did not enter the Judgment of Foreclosure until August 18, 2010. *Id.*, ECF No. 89-16 at PageID.986; (ECF No. 51-10.) By that time, the Niles parcel had been sold at a tax sale the previous month. 2014 Case, ECF No. 89-16 at PageID.988–91. The parcel was subsequently conveyed to the new purchaser, Thomas Beard, by quit-claim deed on August 16, 2010. *Id.*, ECF No. 125-1 at PageID.1526.

On July 6, 2012, Judge Butzbaugh entered an Order Correcting Judgment, which corrected the Judgment of Foreclosure entered on August 18, 2010, by attaching an Amended Schedule A listing the parcels subject to the judgment. (ECF No. 51-10 at PageID.499.) Apart from the Niles parcel, Barnaby also failed to pay taxes on the Benton Harbor parcels, which were subsequently forfeited to Berrien County and sold in foreclosure.

Barnaby took no further action regarding the Niles parcel until 2012, when he filed an amended motion to reopen case and motion for a new foreclosure hearing, in which he alleged that the County mistakenly included the Niles parcel in the foreclosure petition and requested an award of $36,550.00 as compensation for the true value of the property. 2014 Case, ECF No. 125-4 at PageID.1541–42. Among other things, Barnaby alleged that he had entered into a partial payment agreement with Witkowski for less than the full amount to save the Niles parcel from foreclosure. After holding an evidentiary hearing on Barnaby's claim, the Hon. John E. Dewane issued an order on July 13, 2012, finding that Barnaby failed to meet his burden of proving the alleged oral agreement with Witkowski and that no oral agreement to withhold the parcel from sale existed. *Id.*, ECF No. 125-11. Thus, the sale of the Niles parcel was upheld.

Later, on December 17, 2012, Judge Dewane held a hearing on Barnaby's motion for reconsideration on the ground that the foreclosure sale violated his right to due process because it occurred before the foreclosure judgment was entered. *Id.*, ECF No. 89-16. Judge Dewane noted that, despite the fact that Barnaby "knew this property was sold on the day it was sold," he waited more than two years to raise any argument that the sale of his property was improper. *Id.* at PageID.991–97. He further determined that the alleged violations were merely procedural and did not amount to a due process violation because Barnaby "had notice; he was at the sale; he knew what was going on; he had notice of the proceedings prior to that time." *Id.* at PageID.999. Thereafter, Barnaby unsuccessfully sought relief in the Michigan Court of Appeals. *Id.*, ECF Nos. 125-12, 125-13 and 125-15.

B.       **Barnaby's Subsequent Federal Court Proceedings**

1.       **Case No. 1:14-cv-1279**

On December 12, 2014, Barnaby filed a complaint in this Court against Berrien County

and Witkowski, alleging a federal due process claim and several state-law claims arising out of

the 2010 foreclosure. Magistrate Judge Ellen Carmody conducted the proceedings pursuant to 28

U.S.C. § 636(c). Following discovery, Judge Carmody granted the defendants' motion for

summary judgment, finding that the state-court judgment barred Barnaby's claims under the

doctrines of res judicata and collateral estoppel and that certain claims were subject to dismissal

on other grounds as well.[2] *Barnaby v. Witkowski*, No. 1:14-cv-1279, 2018 WL 387961 (W.D.

Mich. Jan. 12, 2018). Barnaby appealed the judgment, and the Sixth Circuit affirmed. 758 F.

App'x 431 (6th Cir. 2018). The court of appeals concluded that Judge Carmody correctly found

that Barnaby's claims were barred by res judicata and collateral estoppel because they all

depended on Barnaby's allegation that he and Defendant Witkowski entered into a partial

payment agreement that Defendant Witkowski violated by selling Barnaby's property at auction,

which the state court found Barnaby failed to prove. The court also found that the state court's

ruling that the sale procedure did not violate Barnaby's due process rights barred his due process

claim in federal court. *Id.* at 436.

Following the affirmance, Barnaby filed a Rule 60(b) motion for relief from judgment,

which Judge Carmody denied on April 9, 2019. 2014 Case, ECF No. 180. Barnaby appealed that

order, and the Sixth Circuit affirmed it on October 8, 2019. *Id.*, ECF No. 194. Barnaby filed a

second Rule 60(b) motion, which I denied on August 23, 2021. *Id.*, ECF No. 202. I denied

---

[2] Judge Carmody initially dismissed the action under the *Rooker-Feldman* doctrine, *see Barnaby v. Witkowski*, No. 1:14-cv-1279, 2016 WL 245227 (W.D. Mich. Jan. 21, 2016), but the Sixth Circuit reversed and remanded the case because it found that Barnaby did not allege injuries arising from the state-court judgment. 2017 WL 3701727, at *2 (6th Cir. Feb. 17, 2017).

Barnaby's motion for reconsideration on September 10, 2021. *Id.*, ECF No. 206. Barnaby appealed both orders, which the Sixth Circuit affirmed on September 26, 2022. 2022 WL 5263832 (6th Cir. Sept. 26, 2022).

### 2.     Case No. 1:20-cv-232

Barnaby filed a second action in this Court on March 16, 2020, against several state-court judges, including current Defendants Chief Judge Mabel J. Mayfield, Judge Butzbaugh, the Berrien County Trial Court, and the Michigan Court of Appeals. *Barnaby v. Mayfield, et al.*, No. 1:20-CV-232. Barnaby sought a declaratory judgment that the named judges and courts violated his constitutional rights. On March 25, 2020, Judge Green issued a report and recommendation noting that the action was "for all practical purposes a continuation of a previous action [Barnaby] unsuccessfully pursued in this Court." *Barnaby v. Mayfield*, No. 1:20-cv-232, 2020 WL 5351083, at *1 (W.D. Mich. Mar. 25, 2020). Judge Green recommended dismissal because the complaint failed to present a live case or controversy and because it was barred by the *Rooker-Feldman* doctrine. *Id.* at *2. Judge Neff adopted the report and recommendation, finding Barnaby's objection without merit. 2020 WL 2214087 (W.D. Mich. May 7, 2020). The Sixth Circuit rejected Barnaby's appeal and affirmed the judgment. 2021 WL 2470304 (6th Cir. May 5, 2021).

### 3.     The Present Action

Barnaby initiated the present action on October 5, 2022, in the Eastern District of Michigan against the State of Michigan, the current and former Michigan governors, Michigan's attorney general, Witkowski, Berrien County, and others based on the alleged wrongful foreclosure of the Niles parcel. (ECF No. 1.) After Barnaby amended his complaint twice—once at the direction of the court and once without leave—the Easten District transferred the action to this district because the real property at issue is located within this district and "the allegations in

Barnaby's pending complaint are substantially similar to those raised in the earlier case and may, in fact, be duplicative of the earlier case." (ECF No. 11 at PageID.231.)

Upon receipt of the case, I issued a report and recommendation recommending that Barnaby's claims be dismissed as barred by the doctrines of claim and issue preclusion. I further noted that Barnaby's conspiracy allegations were wholly without factual support, that Barnaby could not rely on certain statutes that do not provide a private right of action, and that his claims against certain Defendants were barred by the Eleventh Amendment. *Barnaby v. Michigan State Gov't*, No. 1:22-cv-1146, 2022 WL 19005214, at *2–5 (W.D. Mich. Dec. 14, 2022). The Court subsequently adopted the report and recommendation in full over Barnaby's objections and entered judgment dismissing the case. 2023 WL 1960630 (W.D. Mich. Feb. 13, 2023).

Barnaby appealed the judgment to the Sixth Circuit, which affirmed in part, vacated in part, and remanded the matter for further proceedings. As to res judicata, the court found error as to all defendants other than Witkowski and the County because it was unable to determine whether any of the other defendants fell within the limited categories of relationships or circumstances identified in *Taylor v. Sturgell*, 553 U.S. 880 (2008), that can give rise to privity. 2023 WL 8060793, at *2 (6th Cir. Nov. 17, 2023). As to Witkowski and the County, the Sixth Circuit gave Barnaby the benefit of the doubt, accepting his assertions that he could not have raised his present claims in the 2014 Case because they are based on forged documents submitted during that case and the prior state proceedings and various false statements that defendants made in those proceedings; that Witkowski and the County "committed forgeries and other unlawful conduct 'from May of 2010 to present;'" that their forgeries were "continuous," as they mailed and emailed forged documents in October 2017 and July 20, 2022; and that Witkowski testified fraudulently during his September 25, 2017 deposition in the 2014 Case. *Id.*

8

at *3. Finally, the court affirmed the determinations that Barnaby lacks a private right of action under certain federal and state statutes and that several Defendants were immune from suit. *Id.* at *2.

Following remand, I issued an order: (1) granting Barnaby leave to file his Third Amended Complaint (TAC), which remains the operative pleading; (2) denying his numerous motions for entry of default judgment against all Defendants on the grounds that no default had been entered, some Defendants had timely appeared, and Barnaby had yet to effect proper service on the remaining Defendants. In light of the posture of the case, I extended the time under Rule 4(m) for Barnaby to effect service on the unserved Defendants, allowing him 45 days from the date of the order. (ECF No. 91.) That time has not been extended. The Court denied Barnaby's appeal of that order. (ECF No. 127.)

While bursting at its seams with unadorned legal conclusions, the TAC is light on factual content. Moreover, in spite of his arguments to the Sixth Circuit, it is clear that Barnaby simply continues to attack the prior foreclosure proceedings on grounds previously litigated in state court, that could have been litigated in state court, or of which he was well aware prior to filing the 2014 Case. For example, in paragraph 20, he lists five bases for relief. First, he says that Defendants violated state foreclosure law (GPTA), but Judge Dewane already decided this issue—any violation was merely procedural and did not invalidate the foreclosure sale because Barnaby failed to demonstrate a due process violation. Next, Barnaby says that Defendants "stole and defrauded Plaintiff of his properties by willful and wanton misconducts of continuous [f]orgeries . . . with Forged Quit Claim Deed, Forged Notice of Judgment of Foreclosure, and Forged Certificates of Foreclosure." (ECF No. 36 at PageID.180.) But "forgery" is simply a label—a legal conclusion without supporting factual content—that Barnaby has coopted to

revive his claims against Witkowski and the County (and apparently all other Defendants). Nowhere in his 93-page TAC does Barnaby provide facts showing how the foregoing documents were "forged" or used to "defraud" him of his properties. He certainly does not allege that someone other than Witkowski executed those documents, and it has been well known for more than a decade that the Judgment of Foreclosure was not entered until August 18, 2010, after the Niles parcel was sold to Thomas Beard. Barnaby could have asserted this same conclusory "forgery" argument in both the state-court case and the 2014 Case.[3] His instant allegations echo those in his complaint in the 2014 Case that Defendants procured the state-court foreclosure rulings through "false testimony," "fraudulent misrepresentation," and collusion between the County and the state-court judges. 2014 Case, ECF No. 1 at PageID.6, 13–15, 18. Next, Barnaby says that Defendants stole and defrauded him of his properties by Unauthorized Practice of Law, and he cites Witkowski's deposition testimony about his appearance at the March 1, 2010 hearing before Judge Butzbaugh (*id.* at PageID.180. 219), but Barnaby was already well aware of this issue through his attendance at the December 17, 2012 hearing, where Judge Dewane pointed out that Witkowski appeared at the March 1, 2010 hearing without counsel. 2014 Case, ECF No. 89-16 at PageID.985.) Fourth, Barnaby says that his taxes were paid in full for the years in dispute, but his nonpayment has already been determined by the Judgments of Foreclosure entered as to both the Niles parcel and the Benton Harbor parcels, as well as Judge Dewane's order that the foreclosure was valid because no oral partial-payment agreement for the

---

[3] As for Barnaby's claim of "continuous forgeries," he simply means that the same documents he claims without support were "forged" in 2010—the Quit Claim Deed, Notice of Judgment of Foreclosure, and Certificate of Foreclosure—were submitted by Witkowski and the County in the 2014 Case as part of the historical record. Because any legal injury that Barnaby suffered as a result of the foreclosure was complete upon the sale to Mr. Beard, Defendants' submission of those documents in the 2014 Case could not have caused Barnaby further injury. His claim that Defendants committed mail and wire fraud by sending him those documents by email and U.S. mail in October 2017 and July 20, 2022 (ECF No. 36 at PageID.184) is specious.

Niles parcel taxes existed. Finally, once again in conclusory fashion, Barnaby says that Defendants' retaliation "with intentionally false material misrepresentations and or material concealments" deterred him from amending his complaint in the 2014 Case, but nothing in the record of that case supports this assertion.

Finally, Barnaby posits a new theory based on Witkowski's deposition testimony that the Township reduced the assessment for the Niles parcel sometime after the foreclosure sale. (*Id.* at PageID.184–85.) He contends that, had the Niles parcel been properly valued when he owned it, his partial payment would have sufficed to pay the delinquent taxes. He further asserts that, if the Township Defendants and/or Witkowski and the County had paid him $36,000.00 (three times the property's $12,000.00 value in 2017 for unlawfully converting the Niles parcel), he would have had sufficient funds to pay the taxes on the Benton Harbor parcels. (*Id.* at PageID.185–86.)

## II. Discussion

### A. Preliminary Matters

#### 1. Sixth Circuit's Order

At the outset, I find it necessary to address the effect of the Sixth Circuit's order, as Barnaby misconstrues or mischaracterizes certain aspects of the order. First, Barnaby is simply wrong in his contention that the order required this Court to enter defaults and/or default judgments against Defendants on remand. The court concluded that, because it found error in dismissal of the Second Amended Complaint, it was also error to dismiss the motions for default judgment as moot. The Sixth Circuit did not consider the merits of these motions, nor did it direct this Court to reach any particular result on remand. As such, this Court properly considered the motions on remand and found them without merit.

Next, contrary to Barnaby's assertion, nothing in the Sixth Circuit's order precludes any Defendant from filing a motion to dismiss following remand. Barnaby's contention that the State

Defendants forfeited their right to file a motion to dismiss by failing to appeal the Court's dismissal of their prior motion to dismiss as moot in light of its dismissal of the Second Amended Complaint is incorrect. (ECF No. 143 at PageID.1842–43.) In light of the dismissal, the State Defendants had no reason to appeal the dismissal of their motion. In any event, the landscape has since changed, as Barnaby was permitted to file his TAC. Nothing precludes the State Defendants from moving to dismiss the new pleading.

Finally, the law of the case doctrine does not preclude consideration of claim and issue preclusion, as Barnaby contends. Only the Holmstrom Defendants and County Defendants II raise claim and/or issue preclusion (res judicata and collateral estoppel) in the present motions. "The law of the case doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006). "Under the doctrine of the law of the case, determinations of the court of appeals of issues of law are binding on both the district court on remand and the court of appeals upon subsequent appeal." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999); *see also Moody v. Michigan Gaming Control Bd.*, 871 F.3d 420, 425 (6th Cir. 2017) (holding that the law of the case doctrine is primarily "intended to enforce a district court's adherence to an appellate court's judgment"). But the law of the case doctrine has limits. It applies only to "questions necessarily decided." *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016) (quoting *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997)). An issue is "necessarily decided" if it is "fully briefed and squarely decided." *Id.* (quoting *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1071 (6th Cir. 2014)). Moreover, the doctrine presumes that a party has been afforded "a full and fair opportunity to litigate [the issue]." *Vander Boegh*, 772 F.3d at 1071; *see also C.C. v. Wyndham*

*Hotels & Resorts, Inc.*, No. 2:22-cv-3799, 2024 WL 1347303, at *2 (S.D. Ohio Mar. 29, 2024) ("Because Defendant did not have a full opportunity to litigate whether Plaintiff states a CAVRA claim, this Court considers the issue anew.").

Here, the Court raised claim and issue preclusion *sua sponte* without the benefit of any briefing from the parties. In fact, at the time, neither the Holmstrom Defendants nor the County Defendants had been properly served and had not appeared in the case. Thus, due process requires that they be afforded an opportunity to raise those issues. I also note that a fair reading of the Sixth Circuit's order indicates that it did not purport to finally determine the application of res judicata. Instead, it simply noted that it was unable to determine from the face of the operative complaint whether any of the defendants falls within one of the categories set forth in *Taylor*. Likewise, as to Witkowski and the County, the court simply observed that it was "not clear" from the record before it whether Barnaby could have asserted his claims in the 2014 Case. 2023 WL 8060793, at *2–3.

### 2.    Barnaby's Embedded Motions for Summary Judgment

In each of his responses to Defendants' dispositive motions, Barnaby included a purported motion for summary judgment. His requests are improper for a number of reasons. First, because Barnaby failed to assert his entitlement to summary judgment by way of a separate motion, his purported motions are procedurally improper and will not be considered. Second, at least with regard to his responses to the Holmstrom Defendants and the County Defendants II's motions, his embedded requests for summary judgment skirt my April 19, 2024 Order (ECF No 183) requiring Barnaby to obtain leave before filing any further motions. Third, as to all of his requests, Barnaby simply relies on his complaint allegations without submitting evidence. Instead, he simply parrots his conclusory complaint allegations, which fall far short of demonstrating that he is entitled to summary judgment. Fourth, "[t]he general rule is that

summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996). Here, discovery has not even commenced. Last, and perhaps most important, given the numerous bases for dismissal discussed below, summary judgment for Barnaby would be particularly inappropriate.

### 3. Deficient Conspiracy Allegations

Barnaby justifies the broad scope of this action against a multitude of Defendants through allegations of a wide-ranging conspiracy that includes, among others, two former governors, an assistant attorney general, private-practice attorneys, a township, a city, and several judges. As I pointed out in my December 14, 2022 report and recommendation concerning the second amended complaint, Barnaby's conspiracy allegations lacked sufficient factual allegations; they were based entirely on unsupported legal conclusions. (ECF No. 16 at PageID.14–15.) The same holds true with regard to the TAC. A civil conspiracy under Section 1983 is "an agreement between two or more persons to injure another by unlawful action." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged co-conspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). The Sixth Circuit has held that "vague and conclusory allegations, unsupported by material facts, are not sufficient to state a conspiracy claim under § 1983."[4] *Becker v. Clinton*, No. 99-3811, 2000 WL 553911, at *1 (6th Cir. Apr. 28, 2000) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Barnaby's conspiracy allegations are patently deficient.

---

[4] Even if Barnaby intends to assert a conspiracy under state law, the alleged conspiracy would fail for the same reason—lack of supporting facts.

In his response to the City's motion, Barnaby cites Witkowski's deposition testimony from the 2014 Case that the County demolished structures on some of the foreclosed Benton Harbor parcels at the City's request. (ECF 144 at PageID.1980.) Barnaby did not include such an allegation in his TAC, but even if he did, it would fail to establish a conspiracy to deprive Barnaby of any right or to commit an unlawful act against him. At the time of the request, the foreclosures had occurred, and Barnaby no longer had any interest in the properties. Barnaby never challenged that foreclosure proceeding. Thus, he could not have suffered any injury from the demolitions. Moreover, Barnaby describes nothing more than routine interaction between different units of local government aimed at accomplishing a legitimate public purpose. Such activity happens every day, and falls far short of establishing a conspiracy. Finally, Barnaby refers to a so-called "conspiracy of silence" based, apparently, on his view that all Defendants had a duty to prevent other Defendants' unlawful conduct. (*Id.*; ECF No. 173 at PageID.2787.) However, the TAC does not allege such a theory and omits supporting factual allegations, and the theory is legally untenable.

### B.    Dispositive Motions

All Defendants move to dismiss, at least in part, pursuant to Rule 12(b)(6) or 12(c) of the Federal Rules of Civil Procedure. The same standard applies to motions brought under both rules. *See Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008) ("The manner of review under [Fed.R.Civ.P.] 12(c) is the same as a review under Rule 12(b)(6); we must 'construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.'" (quoting *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006))).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The Supreme Court has established that to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss ... Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

### 1.    The City

The City offers multiple grounds for dismissal of Barnaby's claims, which I find persuasive.

a.       **Claims Concerning the 2010 Foreclosure Are Untimely**

The City correctly notes that all of Barnaby's claims against it, to the extent they are based on the 2010 foreclosure, are untimely under every applicable statute of limitations.[5] First, Barnaby's constitutional claims under 42 U.S.C. § 1983 are subject to a three-year limitations period. *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam). At a minimum, this encompasses his claims in Counts I (retaliations); II (right to a fair trial); IV (due process); V (equal protection); VI (rights to government services and rights to use public facilities); VIII (freedom of movements and freedom from torture); XII (unlawful detentions of properties); Count XIII (safety from harassment and the right to gainful employment); XV (whistleblowing); and XVI (the right to housing).[6] Barnaby's gross negligence, damage to personal property, theft and conversion, and intentional infliction of emotional distress claims are also subject to a three-year statute of limitations. Mich. Comp. Laws § 600.5805(2); *see Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656, 679 (6th Cir. 2018) (applying three-year limitations for tort claims under Mich.

---

[5] This conclusion applies both to the foreclosure of the Niles parcel in 2010 and the foreclosure of the Benton Harbor parcels in 2011, to the extent Barnaby asserts a claim based on the latter foreclosure proceeding.

[6] Although Counts III (gross negligence), VII (fraud and misrepresentation), IX (damage to personal property), X (theft and conversion of personal property), XI (intentional infliction of emotional distress), and XIV (rights given by the State of Michigan) appear to invoke state law, in every count Barnaby also cites Section 1983, along with various amendments under the U.S. Constitution, as well as Federal Rule of Criminal Procedure 41. To the extent Barnaby intends to bring these claims under Section 1983, they are all likewise subject to a three-year statute of limitations. Incidentally, Federal Rule of Criminal Procedure 41 has no application in this civil proceeding. *See Barrett v. Ciolli*, No. 1:20-cv-1802, 2021 WL 2221550, at *1 n.1 (E.D. Cal. June 2, 2021) ("[A]s this is a civil case and not a criminal case, the Federal Rules of Criminal Procedure do not apply."); *Aigbekaen v. United States*, No. JKB-19-3017, 2021 WL 921200, at *1 (D. Md. Jan. 28, 2021) ("The Federal Rules of Criminal Procedure do not apply in this case, which is a civil matter.").

Comp. § 600.5805(2) to gross negligence claim). Finally, the fraud and misrepresentation claim is subject to a six-year limitations period. Mich. Comp. Laws § 600.5813.[7]

For Section 1983 claims, accrual is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis for the action. *Collyer*, 98 F.3d at 220. For claims subject to Michigan's three-year period under Section 600.5805(2), the period begins to run from "the time the claim accrues," which is "at the time the wrong upon which the claim is based was done regardless of the time when damage results." Mich Comp. Laws § 600.5827. The six-year limitations period for fraud begins to run as soon as the wrongful fraudulent act is committed. *Boyle v. General Motors Corp.*, 468 Mich. 226, 227 (2003).

The City contends that Barnaby's claims based on the 2010 foreclosure accrued on August 18, 2010, when the Judgment of Foreclosure entered. Arguably, his claims accrued earlier, at the time of the sale in July 2010. Regardless, the limitations period for most of his claims expired in August 2013, and at the latest, August 2016 for his fraud and misrepresentation claim. Thus, the foreclosure-related claims are untimely.[8]

---

[7] While the GPTA authorizes a foreclosed property owner to file a claim for remaining proceeds from the sale or transfer of foreclosed property, a claim for property transferred or sold prior to July 18, 2020, may only be made "if the Michigan supreme court orders that its decision in *Rafaeli, LLC v Oakland County*, docket no. 156849, applies retroactively." Mich. Comp. Laws § 211.78t(b)(i) (footnote omitted). It appears that the Michigan Supreme Court has yet to hold that its decision in *Rafaeli, LLC* is retroactive. Moreover, the claimant "must file a motion with the circuit court in the same proceeding in which a judgement of foreclosure was effective . . . ." *Id.*, § 211.78t(6) (footnote omitted).

[8] The claims are untimely even if Barnaby complains about the foreclosure of the Benton Harbor parcels or if he contends that his claims are based on something that occurred during the 2012 hearings regarding the 2010 foreclosure.

18

### b.      Lack of Involvement

The City is also entitled to dismissal because Barnaby fails to allege any fact showing how the City was involved in the foreclosure proceedings or the prior lawsuits in this Court. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (noting that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights"); *Branham v. Jabe*, No. 88-1250, 1988 WL 81713, at *1 (6th Cir. Aug. 5, 1988) (district court properly granted summary judgment where prisoner in civil rights case failed to allege any personal involvement on the part of the defendants in the events alleged in the complaint). It is undisputed that the County, not the City (or the Township), conducted the foreclosure proceedings as to both the Niles parcel and the Benton Harbor parcels. *See Rafaeli, LLC v. Oakland Cnty.*, 505 Mich. 429, 442 (2020) ("Under the current process, tax-delinquent properties are forfeited to the county treasurers; foreclosed on after a judicial foreclosure hearing; and, if not timely redeemed, sold at a public auction. Counties may elect to serve as the 'foreclosing governmental unit'; otherwise, the state will do so." (footnote omitted)). Likewise, it is undisputed that the City was not involved in any of Barnaby's prior lawsuits. While Barnaby does refer to "demoli[tion] [of his] other properties with tractors," (ECF No. 36 at PageID.247), as already noted, the demolition occurred after Barnaby lost the Benton Harbor parcels in foreclosure, when he lacked any legal or equitable interest in the properties, and it was performed by the County, not the City. Moreover, any such claim is time-barred. Giving Barnaby the benefit of the doubt, he learned of the demolitions no later than September 25, 2017, during Witkowski's deposition, but did not file suit until October 7, 2022.

c.        **Failure to State a Claim**

The City also notes that Barnaby fails to state a claim for a multitude of reasons. For instance, it points out that many of his claims are simply not cognizable here. By way of example, the Sixth Amendment, which guarantees the right to a fair trial (Count II), does not govern civil cases. *Turner v. Rogers*, 564 U.S. 431, 441 (2011). Moreover, to the extent Barnaby relies on the right to a jury trial under the Seventh Amendment, that amendment does not apply to proceedings in state court. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 432 (1996) (observing that "[t]he Seventh Amendment . . . governs proceedings in federal court, but not in state court"). Similarly, dismissal for failure to state a claim under Rule 12(b)(6) or summary judgment under Rule 56 (which is what occurred in the 2014 Case) does not deprive a litigant of his Seventh Amendment right to a jury trial. S*ee Bartlett v. Pfizer, Inc.*, No. 20-5322, 2020 WL 8994754, at *2 (6th Cir. Dec. 8, 2020) ("A litigant has no right to a jury trial if h[is] pleadings fail to state a triable claim."); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 373 n.3 (6th Cir. 2009) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 336 (1979) (same with regard to summary judgment)). It is well established that there is no constitutional right to housing (Count XVI). *See Nachmenson v. de Blasio*, No. 20-CV-4087, 2020 WL 6074061, at *2 (E.D.N.Y. Sept. 11, 2020) ("There is no constitutional right to housing" (citing *Lindsey v. Normet*, 405 U.S. 56, 74 (1972)); *Reese v. Miami-Dade Cnty.*, 242 F. Supp. 2d 1292, 1301 (S.D. Fla. 2002) ("Courts across the country have consistently held that there is no constitutional right to housing.") (citing cases).

But even as to legally-cognizable claims, Barnaby fails to state a claim for two reasons. First, he lists a large group of Defendants and simply levels general allegations of wrongdoing against "Defendants" without stating what each Defendant did to render them liable on the claim. "Courts have found that '"shotgun" allegations of general misconduct' by a group of defendants

is not sufficient to state a claim against each." *Dobronski v. Family First Life, LLC*, No. 22-cv-12039, 2024 WL 1342668, at *10 n.7 (E.D. Mich. Mar. 29, 2024) (quoting *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 601 (E.D. Mich. 2015)); *see also Petrovic v. Princess Cruise Lines, Ltd.*, No. 12-21588-CIV, 2012 WL 3026368, at *3 (S.D. Fla. July 20, 2012) (stating that "a complaint that lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct fails to satisfy Rule 8" (alterations and internal quotation marks omitted)).

Second, rather than attempting to plead the actual elements of his claims, Barnaby simply populates them with legal phrases and conclusions that are repeated throughout the TAC. By way of example, while Count I purports to allege retaliation in violation of the First Amendment, Barnaby fails to allege the elements of that claim: (1) that he engaged in protected conduct: (2) that the defendant took an adverse action against him; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Moreover, to the extent Barnaby purports to rely on Witkowski and the County's filings and actions in prosecuting and/or defending the foreclosure proceedings or the 2014 Case as adverse action, that activity generally does not constitute adverse action for purposes of a retaliation claim. *See United States v. N.Y.C. Trans. Auth.*, 97 F.3d 672, 677 (2d Cir. 1996) (holding that "[r]easonable defensive measures" do not constitute an adverse action because "[a]t some level of generality, any action taken by an employer for the purpose of defending against the employee's charge can be characterized as adverse to the employee"); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) (noting that "it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation."). As the Seventh Circuit observed in a Title VII retaliation claim, "[a]n attempt to obstruct the litigation of the

underlying discrimination complaint, like oppressive discovery requests and the withholding of other evidence, is inseparable from the litigation of the claim. Accordingly, it is a matter to be resolved pursuant to court rules, not by Title VII." *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 486 (7th Cir. 1996). The same holds true in a First Amendment retaliation claim. Similarly, Barnaby's equal protection claim (Count V) fails to allege that any fact showing that any Defendant discriminated against him on the basis of his membership in a protected class (or a class of one). *See Purisch v. Tennessee Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996). Nor does he allege a factual basis to show that he was treated differently than similarly-situated individuals. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Apart from failing to allege facts supporting the elements of his fraud and misrepresentation claim (Count VII), Barnaby wholly fails to comply with Federal Rule of Civil Procedure 9(b), which applies to fraud claims and requires a plaintiff to allege with "particularity" the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993). A party alleging fraud must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Frank v. Dana Corp.*, 547 F.3d 564, 569–70 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). Barnaby refers to "forged" documents used to defraud him of his properties, but he fails to specify the time, place, content, or speaker making the statements on which he allegedly relied.

As a final example, rights given by the State of Michigan (Count XIV) is simply a mishmash of allegations that fail to allege a claim. The Sixth Circuit has affirmed that Barnaby

has no private right of action under the Unauthorized Practice of Law statute or the criminal forgery statutes, his allegations concerning entry of the Judgment of Foreclosure as violating the GPTA were addressed by the state court in 2012, and he supports the claim with nothing more than a recitation of legal conclusions.

### d.    Governmental Tort Liability Act Immunity

The City contends that it is entitled to immunity from Barnaby's tort claims of gross negligence, fraud by misrepresentation, damage to personal property, theft and conversion of personal property, and intentional infliction of emotional distress (Counts III, VII, IX, X, and XI) under the Governmental Tort Liability Act (GTLA).

The GTLA provides: "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." Mich. Comp. Laws § 691.1407(1). The City falls within the definition of a "governmental agency." Mich. Comp. Laws § 691.1401(a) and (e). A "governmental function" is "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." "A party filing suit against a governmental agency bears the burden of pleading his or her claim in avoidance of governmental immunity." *In re Bradley Estate*, 494 Mich. 367, 377 (2013). A party may plead in avoidance of governmental immunity either by stating a claim that falls within one of the GTLA's exceptions or by pleading facts that demonstrate that the alleged tort occurred outside the exercise or discharge of a governmental function. *Genesee Cnty. Drain Comm'r v Genesee Cnty.*, 309 Mich App 317, 327 (2015). Here, Barnaby has not pled that any of the foregoing claims falls within a statutory exception, nor has he alleged facts demonstrating that the City committed the alleged torts while acting outside the exercise or discharge of a government function. Thus, the City is immune from the state-law tort claims.

###### e.      *Monell* Liability

The City contends that it is entitled to dismissal of all of Barnaby's claims under Section 1983 because Barnaby fails to allege a basis for municipal liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A municipality may only be liable under Section 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 39 (2010) (citing *Monell*, 436 U.S. at 694). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

Barnaby's TAC is entirely lacking any allegation that any alleged constitutional violation by the City resulted from the City's policy or custom. Accordingly, apart from other reasons set forth above, Barnaby's Section 1983 claims against the City fail for lack of adequate factual allegations under *Monell*.

###### 2.      State Defendants

Barnaby alleges that Defendant Asbenson, an Assistant Attorney General (AAG), was informed of "Defendants' crimes of forgeries conduct which stole and defraud[ed] [Barnaby] of his properties but omitted to act which aided and abetted the other Defendants and injured [Barnaby]." (ECF No. 36 at PageID.205.) He further alleges that such failure constituted "gross neglect and dereliction of his [fi]duciary duties he owes [Barnaby]." (*Id.* at PageID.206.) As to former Governors Snyder and Granholm, Barnaby alleges that they are coconspirators who "concocted, disguised, designed an evil plot and elaborate scheme which stole and defrauded

24

[Barnaby] of his properties by [their] willful and wanton misconduct and forgeries and retaliation." (*Id.* at PageID.207–08.)

### a.       Failure to State a Claim

As is the case with the City, Barnaby's conclusory allegations without factual support fail to state a claim against any State Defendant. Barnaby fails to allege any fact showing that either former Governors Snyder or Granholm was involved in any aspect of the foreclosure, nor does he allege facts showing that they engaged in wrongful conduct. As for AAG Asbenson, his only apparent connection to Barnaby is that he represented the Michigan Court of Appeals and certain judges in Case No. 1:20-cv-232. By that time, the foreclosures had long been completed. Moreover, whether as opposing counsel in that case or generally in his position as an AAG, Asbenson owed Barnaby no duty to take any action on his behalf. *See Fulson v. City of Columbus*, 801 F. Supp. 1, 6 (S.D. Ohio 1992) ("A public official charged with the duty to investigate or prosecute a crime does not owe that duty to any one member of the public, and thus no one member of the public has a right to compel a public official to act."); *Harrison v Director of Dep't of Corrs.*, 194 Mich. App. 446, 456 (1992) ("Where the duty of a public official arises from his official authority, the duty is for the benefit of the public at large," not a specific individual.)

### b.       Eleventh Amendment Immunity

To the extent Barnaby sues the State Defendants in their official capacities, his claims are barred by Eleventh Amendment immunity. *See Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 732–33 (6th Cir. 2022) (Michigan Governor); *Streater v. Cox*, 336 F. Appx 470, 475 (6th Cir. 2009) (claims against AAG in his official capacity barred by the Eleventh Amendment); *Tyson v. Whitmer*, No. 2:21-CV-11150, 2021 WL 2682805, at *3 (E.D. Mich. June 30, 2021) ("Governor Whitmer, Attorney General Nessel, and the State of Michigan are entitled to Eleventh

Amendment immunity on the plaintiff's claims for monetary damages (or other retrospective relief) against them in their official capacities."). This immunity applies to federal and state claims alike. *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103-06 (1984); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

### c.    GTLA Immunity

Former Governors Snyder and Granholm are entitled to absolute immunity under the GTLA. In particular, the GTLA provides:

> A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

Mich. Comp. Laws § 691.1407(5). The office of Governor qualifies for absolute immunity under this provision. *Callahan v. Legal Servs. Admin.*, No. 360118, 2023 WL 2439700, at *8 (Mich. Ct. App. Mar. 9, 2023). Although Barnaby does not specifically allege what these Defendants did, he fails to allege that they took any actions outside the scope of their governmental functions. Accordingly, they are entitled to absolute immunity.

Defendant Asbenson is also entitled to immunity from both the intentional tort claims and the gross negligence claim. In order to be immune from liability, an employee must show: (1) that his acts were undertaken during the course of his employment, and he was acting, or reasonably believed he was acting, within the scope of his employment; (2) he performed the challenged acts in good faith or without malice; and (3) the acts were discretionary, as opposed to ministerial. *Odom v. Wayne Cnty.*, 482 Mich. 459, 473–76 (2008). "Good faith" is a subjective test, under which a defendant is subject to liability only if he acted with "malicious intent." *Id.* at 482. Although Barnaby's allegations are not entirely clear, it appears that the first and third requirements are met, as Defendant Asbenson acted in his capacity as an AAG, and the decision

to investigate or act regarding an alleged crime is discretionary rather than ministerial. The second element is also met as the TAC contains no allegation suggesting that Asbenson engaged in misconduct or acted with malicious intent. Rather, Barnaby simply faults him for failing to act.

Defendant Asbenson is also immune on the gross negligence claim. The GTLA grants immunity for officers and employees acting within the scope of their authority and engaged in the discharge of a governmental function unless their conduct amounts to gross negligence that is "the one most immediate, efficient, and direct cause preceding an injury." Mich. Comp. Laws § 691.1407(2). Gross negligence is defined by the GTLA as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). As discussed above, Asbenson was acting in his capacity as an AAG defending Michigan judges from a groundless suit. Thus, he was engaged in the discharge of a governmental function. Finally, the TAC contains no allegation indicating that Asbenson engaged in reckless conduct, let alone conduct that was the one most immediate, efficient, and direct cause preceding Barnaby's injury. Barnaby's injury occurred in 2010, long before Asbenson crossed paths with Barnaby. Finally, Barnaby simply alleges that Asbenson failed to act, which does not amount to recklessness.

### 3. Judicial Defendants

Barnaby alleges that Defendant Judges Murray and Gleicher "failed to correct the Michigan Court of Appeals record" and "set the record straight" regarding the foreclosure documents. (ECF No. 36 at PageID.216–17.) He alleges that Justice Clement "is the highest ranking judicial officer of the Defendant Michigan Supreme Court, with supervisory authority to address former Chief Judge Butzbaugh's [Linchpin] Foreclosure Judgment on August 18, 2020." (*Id.* at PageID.223.) Finally, Barnaby alleges that former Justice McCormack failed to manage or supervise the State Bar of Michigan in handling his UPL claim regarding Witkowski's

appearance in the Berrien County Trial Court. (*Id.* at PageID.220–22.) He also appears to argue that former Justice McCormack failed to supervise the Michigan Court of Appeals in correcting the record. (*Id.* at PageID.222.) Barnaby sues the individual Judicial Defendants only in their official capacities. (ECF No. 36 at PageID.179.)

Because Barnaby sues the individual Judicial Defendants only in their official capacities, his suit against them is barred by the Eleventh Amendment. *See Gentry v. Thompson*, No. 17-5204, 2017 WL 7736937, at *2 (6th Cir. Sept. 14, 2017) ("Eleventh Amendment sovereign immunity bars Gentry's claims to the extent that he sued Judge Thompson in his official capacity."); *LaFountain v. Meyer*, No. 1:16-cv-658, 2016 WL 3679279, at *2 (W.D. Mich. July 12, 2016) ("The Sixth Circuit Court of Appeals has already considered the application of Eleventh Amendment immunity to Michigan state courts. The Sixth Circuit determined that Michigan's courts are arms of the state and thus entitled to Eleventh Amendment immunity.") (citing *Pucci v. 19th District Court*, 628 F.3d 752, 760–74 (6th Cir. 2010)). This immunity bars Barnaby's claims for damages, as well as his request for declaratory relief against the Judicial Defendants.[9] *See Rogers v. Michigan Dep't of Corrs.*, No. 1:07-cv-1178, 2008 WL 2074021, at *1 (W.D. Mich. May 15, 2008) ("Regardless of the form of relief requested (i.e., whether Plaintiff seeks damages or declaratory and injunctive relief), the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute." (citing *Pennhurst State Sch. & Hosp.*, 465 U.S. at 98-101; *Alabama v. Pugh*, 438 U.S.

---

[9] To the extent Barnaby may argue that he intended to sue the Judicial Defendants in their individual capacities as well, the Judicial Defendants would be entitled to absolute judicial immunity, as Barnaby alleges only acts they would have performed in their roles as judicial officers. *See Mireles v. Waco*, 502 U.S. 9, 9–10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978).

781, 782 (1978); and *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994))). Finally, consistent with my prior recommendation that the Michigan Supreme Court is entitled to Eleventh Amendment immunity, Barnaby's claims against the Michigan Court of Appeals are likewise barred by this immunity.[10] *See Tillman v. Michigan Court of Appeals*, No. 2:14-CV-13282, 2014 WL 4706003, at *4 (E.D. Mich. Sept. 22, 2014) ("The Michigan Court of Appeals is entitled to Eleventh Amendment immunity and Plaintiff's complaint must be dismissed.").

### 4.    Holmstrom Defendants

Defendant Jeffrey Holmstrom and his firm represented Witkowski and the County in the 2014 Case and the Berrien County Trial Court and the judges of that court in Case No. 1:20-cv-232.

### a.    Claim Preclusion

The Holmstrom Defendants first contend that *res judicata*, or claim preclusion, bars the instant action against them. The doctrine of claim preclusion provides that, if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies, with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994); *see Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982); *Bowen v. Gundy*, No. 96-2327, 1997 WL 778505, at * 1 (6th Cir. Dec. 8, 1997). Claim preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Claim

---

[10] The Judicial Defendants also contend that the TAC lacks allegations supporting a viable claim against them. (ECF No. 151 at PageID.2379–81.) Although this argument has merit—as is the case for all Defendants—I find it unnecessary to address it separately in light of Eleventh Amendment immunity.

preclusion has four requirements: "(1) a final decision on the merits; (2) a subsequent action between the same parties or their privies; (3) an issue in a subsequent action which should have been litigated in the prior action; and (4) an identity of the causes of action." *Wilkins v. Jakeway*, 183 F.3d 528, 532 (6th Cir. 1999).

The first element is met as there was a final decision on the merits in the 2014 Case. Next, the requirement of privity is satisfied based on the Holmstrom Defendants' representation of Witkowski and the County in the 2014 Case. Applying res judicata under federal law, the Sixth Circuit has found that an attorney's representation of a defendant in a prior proceeding satisfies the privity requirement. *Kimball v. Orlans Assocs. P.C.*, 651 F. App'x 477, 481 (6th Cir. 2016) ("The Attorney Defendants are also in privity with Chase concerning the mortgage foreclosure by virtue of their position as foreclosure counsel." (citing *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000))); *Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002) (holding that a law firm that served as the debtor's counsel in the prior bankruptcy proceeding met the "identity of the parties" requirement for claim preclusion even though the law firm was replaced as the debtor's counsel only one month after the petition was filed). District courts have reached the same conclusion. *See Sandlin v. CitiMortgage, Inc.*, No. 2:19-cv-02368, 2021 WL 1581771, at *6–7 (W.D. Tenn. Mar. 1, 2021) ("Keller and Kroplin, whose involvement in this matter is based on their work as counsel in *Sandlin* III, are also in privity with CitiMortgage."); *Laues v. Roberts*, No. 2:14-CV-12313, 2015 WL 1412631, at *6 (E.D. Mich. Mar. 25, 2015) ("Although Hathaway and Bodman were not parties in *Laues I*, they represented BANA and were sufficiently connected with its interest to constitute its privy.").

The third element is also met because the issues Barnaby raises here were actually litigated, or should have been litigated, in the 2014 Case. Notwithstanding Barnaby's prior

representations to the Sixth Circuit, the TAC clearly demonstrates that Barnaby is attacking the validity of the 2010 foreclosure of the Niles parcel. Barnaby may be singing in a different key now, but it is still the same tune. Barnaby's assertion—to the state court in 2012, to Judge Carmody in the 2014 Case, and now to this Court—has always been that the foreclosure was invalid because the foreclosure documents, including the August 18, 2010 Judgment of Foreclosure, failed to comply with the GPTA or were fraudulent. Barnaby cannot obtain a third bite at the apple simply by applying a new label (forgery) to the same documents he previously asserted were invalid or fraudulent. By the same token, it is inconceivable that any false or fraudulent statement (Barnaby does not identify one) Witkowski made in his deposition in the 2014 Case could have been material to Judge Carmody's decision, as she relied entirely on the historical record and never once mentioned or cited Witkowski's deposition. Like Judge Dewane, she was aware that the Judgment of Foreclosure had not entered prior to the sale to Mr. Beard and that it had not been entered on March 1, 2010. Moreover, to the extent Barnaby uncovered anything in Witkowski's deposition he believed affected the validity of the foreclosure, he had ample opportunity to raise it in the 2014 Case, as he deposed Witkowski several weeks prior to the close of discovery. Barnaby's assertion that Witkowski, the County, or the Holmstrom Defendants prevented him from raising some unidentified issue in the 2014 Case is specious, particularly considering the docket reports in this action and the 2014 Case, which show that Barnaby was more than capable of filing whatever document he thought necessary.

Finally, the last element (identity of causes of action) is met because it is clear from the TAC that Barnaby's claims here arose out of the same transaction as the claims in the 2014 Case—the 2010 foreclosure of the Niles parcel and related proceedings.

Barnaby's citation of elements for issue preclusion (determination of the issue was necessary to the outcome of the prior proceeding and the party against whom the determination is offered had a full and fair opportunity to litigate the issue) (ECF No. 202 at PageID.3132–33) misses the mark, as the Holmstrom Defendants do not rely on issue preclusion. Accordingly, Barnaby's claims against the Holmstrom Defendants are barred by claim preclusion.

### b.      State Actor Status

The Holmstrom Defendants argue, alternatively, that they were not state actors for purposes of Section 1983 simply because they represented governmental clients. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Barnaby fails to assert a valid Section 1983 claim against the Holmstrom Defendants because it is well established that private attorneys are not state actors for purposes of constitutional claims under Section 1983. *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981); *see also Dallas v. Holmes*, 137 F. App'x 746, 752 (6th Cir. 2005) ("It is well-settled that a lawyer representing a client is not a state actor 'under color of law' within the meaning of § 1983." (citing *Polk Cnty.*, 454 U.S. at 318)); *Geiling v. Wirt Fin. Servs., Inc.*, No. 14-11027, 2014 WL 8473822, at *68 (E.D. Mich. Dec. 31, 2014), *report and recommendation adopted in part and rejected in part*, 2015 WL 1529866 (E.D. Mich. Mar. 31, 2015) (stating that "attorneys do not become state actors either by virtue of their position or by using court procedures, such as subpoenaing evidence"). Moreover, the Sixth Circuit recently noted that this principle holds true even when private-sector attorneys represent government entities. *Blackwell v. Allen*, No. 22-1300, 2022 WL 17832191, at *6 (6th Cir. Dec. 21, 2022) ("A private-sector attorney does not

automatically become a state actor just by representing a government entity."). Finally, Barnaby neither alleges nor argues that the Holmstrom Defendants can be considered state actors under any theory recognized by the Supreme Court. *See Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (describing: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test).

### c.      Failure to State a Claim

Lastly, the Holmstrom Defendants contend that Barnaby fails to state any viable claim against them. As set forth above in my discussions of the City's and the State Defendants' motions, Barnaby's purported claims fail for many reasons. There is no need to analyze the claims separately as they relate to the Holmstrom Defendants because they are deficient in the same respects discussed above.

### 5.      Township Defendants

The Township Defendants were not involved in the foreclosure proceedings relating to the Niles parcel. Rather, the Township was the taxing jurisdiction responsible for administering the property tax under the GPTA. Mich. Comp. Laws § 211.27; *see also Wizinsky v. Leelanau Cnty.*, No. 1:19-cv-894, 2020 WL 6597637, at *9 (W.D. Mich. Aug. 20, 2020), *report and recommendation adopted*, 2020 WL 5809998 (W.D. Mich. Sept. 30, 2020). Barnaby contends that the Township overvalued the Niles parcel for tax year 2007 at $36,550.00 and overtaxed at $506.05. He asserts that the value should have been much less and that the resulting tax, $305.73 by his calculation, would have allowed him to redeem the property.

### a.      Tax Injunction Act and Principles of Comity

The Township Defendants move for dismissal for lack of jurisdiction pursuant to Rule 12(b)(1) based on the Tax Injunction Act (TIA), 28 U.S.C. § 1341, and principles of comity.

The TIA, adopted in 1937, provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA bars federal district courts from hearing claims seeking declaratory or injunctive relief against a state's or a local government's tax scheme or taxing authority. *See Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981) (noting that the TIA "was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes"); *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (concluding that the TIA "also prohibits a district court from issuing a declaratory judgment holding state tax laws unconstitutional"). In determining whether the TIA applies, a court should first identify the relief sought. *Hibbs v. Winn*, 542 U.S. 88, 99 (2004). Here, Barnaby seeks primarily damages, which the TIA does not expressly preclude.

Nonetheless, the doctrine of comity may bar such a claim in certain circumstances. In *Fair Assessment in Real Estate Association, Inc. v. McNary*, 454 U.S. 100 (1981), the plaintiffs filed suit against various county and state tax officials under Section 1983 alleging that the defendants deprived them of equal protection and due process by unequal taxation of real property. The plaintiffs sought actual damages resulting from the overassessments and punitive damages. *Id.* at 106. The Supreme Court concluded that principles of federalism precluded federal courts from invoking jurisdiction to decide constitutional challenges to the administration of a state tax regime. The Court rejected the plaintiffs' assertion that a damages remedy under Section 1983 would be less disruptive on state tax schemes than suits for injunctive relief, reasoning that a district court could award damages only if it first determined that the

34

administration of the tax system violated the plaintiff's constitutional rights. *Id.* at 113. It also noted that allowance of the suit would intrude on the enforcement of the state scheme:

> "To allow such suits would cause disruption of the states' revenue collection systems equal to that caused by anticipatory relief. State tax collection officials could be summoned into federal court to defend their assessments against claims for refunds as well as prayers for punitive damages, merely on the assertion that the tax collected was willfully and maliciously discriminatory against a certain type of property. Allowance of such claims would result in this Court being a source of appellate review of all state property tax classifications."

*Id.* at 114 (quoting district court's opinion). The Court concluded that comity precludes taxpayers from indirectly challenging state tax systems through damage actions under Section 1983. *Id.* at 116.

The instant case is comparable to *Indigenous American People Inhabiting County of Wayne, Michigan v. Wayne County Municipal Corp.*, No. 19-cv-12579, 2020 WL 1910150 (E.D. Mich. Apr. 20, 2020). In that case, a group of individuals who lived in Wayne County alleged that the county collected an unlawful amount of property taxes from them and that the over-taxation led to foreclosure and the sale of their homes. *Id.* at *1. While the allegations regarding over-taxation in *Indigenous American People* were more detailed than those in this case, the essence of their claims was that the county's administration of the tax system violated their constitutional rights. The court observed that the practical effect of these allegations would require a finding that the defendants' tax collection violated the plaintiffs' constitutional rights or other federal laws. *Id.* at *6. It further noted that success on the plaintiffs' Fourth, Fifth, and Eighth Amendment claims would require it to find that the practices the defendants used to collect property taxes are unconstitutional. *Id.* Thus, the court fount that Section 1341 and related principles of comity compelled it to find that it lacked subject matter jurisdiction over the plaintiffs' federal-law claims. *Id.* at *8.

Here, Barnaby has asserted various claims under Section 1983, although he has not directly connected them to his claim that the Township over-assessed and over-taxed the Niles parcel for tax year 2007. Nonetheless, giving Barnaby the benefit of the doubt as a pro se plaintiff, it is likely that he intended at least some of those claims to encompass the Township's alleged over-assessment of the Niles parcel. Moreover, like the plaintiffs in *Indigenous American People*, Barnaby requests not only substantial damages, but unspecified declaratory relief that may well encompass his claim that the Township overtaxed the Niles parcel. (ECF No. 36 at PageID.175, 176, 226 and 264.) These circumstances indicate that the Court may not exercise jurisdiction over Barnaby's claim against the Township Defendants. *See Izzo v. City of Syracuse*, No. 98-CV-0778, 2000 WL 1222014, at *3 (N.D.N.Y. Aug. 3, 2000) ("Federal courts are precluded from exercising jurisdiction over challenges to state tax assessments, regardless of the type of relief sought." (citing *Bernard v. Village of Spring Valley*, 30 F.3d 294, 297 (2d Cir. 1994) (footnote omitted))).

The final question is whether Barnaby has a plain, speedy, and efficient remedy in state court. 28 U.S.C. § 1341. The answer to that question is that he does, as explained in *Operation Unification, Inc. v. Genesee County Municipality*, No. 18-13779, 2019 WL 2932456 (E.D. Mich. Apr. 16, 2019), *report and recommendation adopted*, 2019 WL 2067139 (E.D. Mich May 10, 2019):

> Michigan law provides a procedure for challenging tax assessments. The General Property Tax Act ("GPTA"), M.C.L. 211.1 *et seq.*, "specifies a method by which 'person[s] whose property is assessed on the assessment roll or [their] . . . agent[s]' may 'protest' the assessment on their property before the board of review." *Spartan Stores, Inc. v. City of Grand Rapids*, 861 N.W.2d 347, 350, 307 Mich. App. 565, 570 (Mich. App. 2014) (citing M.C.L. 211.30(4)). "If the property owner or its agent so chooses, they may appeal the board's decision to the Tax Tribunal," under Michigan's Tax Tribunal Act "TTA"), M.C.L. 205.701 *et seq.*; *Spartan Stores* at 570.

*Id.* at *5. It is irrelevant that this remedy may no longer be available to Barnaby, as "the test is whether an adequate state remedy ever existed for the plaintiff." *Shahin v. City of Dover*, No. 12-604, 2014 WL 1092385, at *3 (D. Del. Mar. 14, 2014) (citing *Sappington v. Pennsylvania*, 535 F. Supp. 429, 431 (E.D. Pa. 1982)). Accordingly, the Court lacks jurisdiction over Barnaby's Section 1983 claims to the extent that they concern the Township's alleged over-assessment of the Niles parcel.

### b. All Claims against the Township Defendants Are Untimely

The Township Defendants echo the City's argument that Barnaby's claims against them are time-barred. The Township's only involvement was that it administered the property tax as to the Niles parcel. Because Barnaby complains about the 2007 tax assessment, any possible claim that he has under federal or state law is barred by the applicable statute of limitations. To the extent Barnaby asserts his fraud and misrepresentation claim against the Township Defendants, that claim would have accrued in 2007, as the only arguable fraudulent act would have been the overassessment of the Niles parcel in 2007.

### c. GTLA Immunity

The Township Defendants also contend that they are immune from the state-law tort claims under the GTLA. Like the City, the Township falls within the definition of a "governmental agency." Mich. Comp. Laws § 691.1401(a), (d), and (e). In addition, the Township's alleged activity—assessment of property taxes—is clearly a governmental function. Mich. Comp. Laws § 211.10(1). Because Barnaby fails to plead facts in avoidance of governmental immunity, he is barred from asserting his state-law tort claims against the Township Defendants.

### d.   Other Bases

The Township Defendants further assert the same arguments raised by the City with regard to the actual claims, *i.e.*, lack of *Monell* allegations, failure to plead viable claims, and lack of a private right of action. In light of my previous analysis of these issues as to the City, the Township Defendants are also entitled to dismissal on these grounds.

### 6.   County Defendants II

The County Defendants II move for dismissal pursuant to Rule 12(b)(5) for insufficient service of process and Rule 12(b)(6) for failure to state a claim. Defendant Witkowski was the Treasurer at the time of the 2010 foreclosure and a defendant in the 2014 Case; Defendant Culberson was a notary public working for the County and is alleged to have notarized the so-called "forgery" documents (although she only notarized the quitclaim deed to Mr. Beard). (ECF No. 36 at PageID.194.) Defendant McGovern was corporation counsel for the County who took over for previous corporation counsel Donna B. Howard. He is sued because he was the County's attorney. (*Id.* at PageID.200–01.)

The County Defendants II move for dismissal due to Barnaby's failure to serve them properly. Barnaby named each of the County Defendants II in his second amended complaint. Pursuant to the December 27, 2023 Order (ECF No. 91), Barnaby was afforded 45 days, or until February 10, 2024, to serve the unserved Defendants named in the second amended complaint. Instead of using this time to accomplish service as set forth in the order, Barnaby filed an improper interlocutory appeal to the Sixth Circuit, which was eventually dismissed. He failed to effect service within the 45-day extension. Subsequently, on April 22, 2024, Barnaby made further attempts to serve the County and the individual County Defendants, including the Berrien County Trial Court and judges of that court. (ECF No. 189-1.) On April 29, 2024, Defendant

Witkowski signed for a package postmarked April 23, 2024, containing a summons issued by the Eastern District of Michigan on November 15, 2022. (ECF No. 206-2.)

As the County Defendants II note, Barnaby failed to properly serve them prior to the February 10, 2024 deadline, and he never moved for an extension for good cause. Given his failure to take *any* action to serve Defendants properly within the extended deadline, good cause does not exist to extend the time for service. Regardless, even if good cause existed to extend the deadline, or if Barnaby had properly served the County Defendants II, the claims against them are properly dismissed with prejudice.

First, as Defendants note, Barnaby's claims are barred by claim preclusion.[11] As explained in the discussion regarding the Holmstrom Defendants, elements 1, 3, and 4 of the claim-preclusion test are met. Because Witkowski was a party in the 2014 Case, the second element is met, and privity is not an issue for him. Turning to Defendant McKinley, Defendants contend that he is entitled to privity for the same reasons as the Holmstrom Defendants—he was acting as an attorney within the scope of representing the County and its officials. In fact, because McKinley appeared as counsel for the County and Witkowski in the 2014 Case, the requirement of privity is satisfied for the same reasons set forth above for the Holmstrom Defendants.

The analysis for Culberson is slightly different. When, as here, a plaintiff in a Section 1983 action "fails to clearly notify a state official that he intends to seek individual liability, it is presumed that a state official is sued in her official capacity." *Hill v. Michigan*, 62 F. App'x 114, 115 (6th Cir. 2003) (citing *Moore v. City of Harriman*, 272 F.3d 769, 775 (6th Cir. 2001) (en banc)). Because Barnaby failed to clearly notify Culberson that he intended to seek individual

---

[11] The County Defendants II also cite issue preclusion, but because claim preclusion clearly bars Barnaby's instant claims, there is no need to address issue preclusion.

liability against her, it must be presumed that he sued Culbertson only in her official capacity. Privity is satisfied in this situation because the Sixth Circuit has held that "[a] government official sued in his or her official capacity is considered to be in privity with the government." *Pittman v. Michigan Corrs. Org.*, 123 F. App'x 637, 640 (6th Cir. 2005) (internal quotation marks omitted); *see also Heike v. Central Mich. Univ. Bd. Of Trs.*, 573 F. App'x 476, 481 (6th Cir. 2014) ("Our court recognizes that '[i]ndividuals sued in their official capacities stand in the shoes of the entity they represent.'" (quoting *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003)).

The County Defendants II also point out, correctly, that dismissal is warranted because the TAC fails to allege a viable claim against them. As discussed regarding the City's motion, Barnaby fails to allege facts showing that Defendants engaged in any unlawful conduct. His allegations are based on nothing more than legal conclusions that cannot survive dismissal under the *Twombly/Iqbal* standard. In addition, absolute witness immunity bars a claim that is based on a defendant testifying in a prior judicial proceeding. *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) ("It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings."); *accord Hinchman v. Moore*, 312 F.3d 198, 205 (6th Cir. 2002). Defendants correctly note that Witkowski is entitled to absolute immunity on any claim by Barnaby that he testified falsely during his deposition or in his affidavit submitted in the 2014 Case. *See Lewis v. Drouillard*, No. 09-11059, 2010 WL 3464308, at *3 (E.D. Mich. Aug. 30, 2010) (witness immunity extends to testimony in depositions, even when no hearing occurs because "because the need to promote truthful testimony exists regardless of whether a case goes to trial"). Finally, Witkowski is entitled to immunity from the state-law tort claims under the GTLA because he was acting within the scope of his authority in conducting the 2010 property tax foreclosure. *See HRSS, Inc. v. Wayne Cnty. Treasurer*, 279 F. Supp. 2d 846, 851

(E.D. Mich. 2003) ("The Wayne County Sheriff and Treasurer were acting within the scope of their authority when they held and disbursed funds from foreclosure sales, and thus are immune from tort liability under this statute.").

### 7.    County Defendants I

The County Defendants I consist of two groups of Defendants. The first includes Berrien County Government; Berrien County Board of Commissioners; Shelly Weich, who succeeded Witkowski as Treasurer; Lora L. Freeling, the County Register of Deeds; Donna B. Howard, the County's former corporate counsel who represented the County during the post-foreclosure hearings held in 2012; and McKinley R. Elliott, who apparently was the County's corporate counsel at some point. These defendants were named in the second amended complaint. The second group consists of the Hon. Mabel Mayfield, Hon. Gary J. Bruce, and the Berrien County Trial Court, who were first named in the TAC.

The County Defendants I move for dismissal pursuant to Rule 12(b)(5) for insufficient service of process. Although this ground has merit, I recommend instead the Court dismiss this action with prejudice for lack of subject matter jurisdiction. The Sixth Circuit has held that a court may dismiss an action *sua sponte* "for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479–80 (6th Cir. 1999); *see also Wagenknecht v. United States*, 533 F.3d 412, 417 (6th Cir. 2008). Here, as set forth above, numerous grounds support dismissal for lack of subject matter jurisdiction.

First, as to Judges Mayfield and Bruce and the Berrien County Trial Court, because Barnaby asserts only official capacity claims (ECF No. 36 at PageID.178–79), those claims are

barred by Eleventh Amendment immunity.[12] *See Hammond v. City of Troy*, No. 15-12051, 2016 WL 1125647, at *2 (E.D. Mich. Feb. 28, 2016), *report and recommendation adopted*, 2016 WL 1104040 (E.D. Mich. Mar. 21, 2016) (claims barred by the Eleventh Amendment properly dismissed under *Apple* as devoid of merit); *Hazelrigg v. Kentucky*, No. 5:13-cv-148, 2013 WL 3364345, at *2 (E.D. Ky. July 3, 2013) (same).

Second, dismissal is warranted because all of Barnaby's claims against the County Defendants I are facially time-barred. *See Saunders v. Obama*, No. 1:10-cv-836, 2012 WL 1030473 at *8 (S.D. Ohio Mar. 27, 2012), *report and recommendation adopted*, 2012 WL 1606664 (S.D. Ohio May 7, 2012) (dismissal proper because "Plaintiff's claims are not only implausible on other grounds, but are facially time-barred"); *EEOC v. International Bhd. of Elec. Workers Local Union 998*, 343 F. Supp. 2d 655, 660 (N.D. Ohio 2004) (time-barred harassment and discrimination subject to dismissal under *Apple*).

Third, Barnaby's claims against the County Defendants I, indeed, against all Defendants, are "totally implausible" as he fails to allege any viable claim. *See Phillips v. Trump*, No. 18-6341, 2019 WL 7372704, at *2 (6th Cir. Nov. 20, 2019). Indeed, Barnaby's claims lack an arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). I therefore recommend dismissal.

### C.  Motions/Objection

Barnaby filed an objection to my February 28, 2024 Order (ECF No. 140). (ECF No. 142.) To the extent the objection is addressed to me for reconsideration of the Order, the objection will be **overruled** because Barnaby fails to demonstrate any basis for reconsideration other than his disagreement with the Order.

---

[12] This ground also applies to the claim against Hon. Alfred M. Butzbaugh (deceased).

Next, I recommend that the Court **deny** Barnaby's Amended Request to the Clerk for entry of default judgment against Defendants Butzbaugh, Jarvis, Culberson, Witkowski, and McGovern (ECF No. 182) for the reasons previously discussed in prior orders denying Barnaby's numerous motions for entry of default judgment. Moreover, his motion lacks merit because his claim is not for a sum certain, and the Clerk is not authorized to enter a default judgment in such a case. Finally, even if Barnaby had properly served these Defendants, defaults had been entered, and Barnaby had requested that the Court enter a default judgment, entry of a default judgment would still be improper because a court may not enter a default judgment upon a legally insufficient claim. *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988); *see also Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered."). All of Barnaby's claims are legally insufficient for the reasons discussed above.

Next Barnaby's motions for leave to file and issue summonses (ECF Nos. 189 and 199) will be **denied as moot** in light of the recommendation for dismissal of Barnaby's claims with prejudice.

Finally, Barnaby's motion for leave to file a fourth amended complaint (ECF No. 146) will be denied, as his proposed fourth amended complaint (ECF No. 145) fails to cure the pleading deficiencies set forth above. Rather, it perpetuates the same conclusory allegations and meritless claims and would be subject to dismissal on the same grounds as the TAC.

### D.     City's Rule 11 Motion/Filing Restriction

The City moves for sanctions pursuant to Federal Rule of Civil Procedure 11. In particular, the City requests that the Court sanction Barnaby by placing him on restricted filer status and requiring him to pay the City's costs and fees, and that the Court relieve the City of

any obligation to respond to Barnaby's motions and other filings in this action. (ECF No. 148 at

PageID.2310.)

Pursuant to Rule 11, an attorney or an unrepresented party who files a pleading or other

paper with a court certifies that, among other things:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; [and]

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1)– (3). "[T]he central purpose of Rule 11 is to deter baseless filings in

district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

In determining whether a party has violated Rule 11, courts examine whether the conduct

was reasonable under the circumstances. *See Ridder v. City of Springfield*, 109 F.3d 288, 293

(6th Cir. 1997). The standard is an objective one. *Jackson v. Law Firm of O'Hara, Ruberg,*

*Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989); *see also First Bank of Marietta v.*

*Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) (noting that "the imposition

of Rule 11 sanctions requires a showing of 'objectively unreasonable conduct'" (quoting *United*

*States v. Kouri–Perez*, 187 F.3d 1, 8 (1st Cir. 1999)). "Thus, [a party's] good faith is not a

defense." *Id.* The party's conduct is to be judged at the time the pleading or paper was signed

rather than from hindsight. *See INVST Fin. Grp., Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391,

401 (6th Cir. 1987). Pro se litigants, like attorneys, "must comply with Rule 11 and make a

reasonable inquiry as to whether a complaint is well-grounded in fact and warranted by existing

law." *Stevens v. Mooney*, No. 95-1757, 1996 WL 125048, at *1 (6th Cir. Mar. 20, 1996).

For many of the reasons set forth above, Barnaby's conduct in filing this action violated Rule 11. All of his pleadings were objectively baseless, as his claims were clearly time-barred, legally insufficient, and lacking in factual support. For example, his assertion of a wide-ranging conspiracy to deprive him of his properties was based on nothing more than legal conclusions employed to ensnare individuals who had no, or only some, tangential connection with the 2010 foreclosure, such as notarizing a document or accepting a document for recording. In many instances, Barnaby completely failed to allege that a defendant engaged in any specific conduct at all that could give rise to liability. Moreover, given that Barnaby has previously filed two unsuccessful actions in this Court regarding the 2010 foreclosure, his filing of a third action demonstrates that it was filed for an improper purpose, such as harassment. Barnaby's filing of multiple motions for entry of default judgment that were totally devoid of merit certainly bolsters this conclusion.

Upon finding that Rule 11 has been violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The determination of an appropriate sanction is a matter committed to the discretion of the district court. *See Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 376 (6th Cir. 1996). However, "[t]he central purpose of Rule 11 sanctions is deterrence, not compensation." *Williams v. Supreme Court of Ky.*, No. 89-5103, 1990 WL 136118, at *3 (6th Cir. 1990). Thus, "courts should impose the least severe sanction that is likely to deter." *Jackson*, 875 F.2d at 1229.

Although the City requests an award of all its reasonable fees and costs, which likely would be in the tens of thousands of dollars, I recommend that the Court award the City a

sanction of $1,500.00 against Barnaby. This amount should be sufficient to deter similar filings in the future.

Apart from a monetary sanction, I recommend that the Court impose a filing restriction pursuant to Rule 11 and/or its inherent authority. A court may not absolutely bar an individual from filing an action in federal district court. *See Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996). Nonetheless, "[a] district court has the authority to issue an injunctive order to prevent prolific and vexatious litigants from filing pleadings without first meeting pre-filing restrictions." *Stewart v. Fleet Fin.*, No. 99-2282, 2000 WL 1176881, at *2 (6th Cir. Aug. 10, 2000) (citing *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998), and *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987)). Here, I propose that the Court preclude Barnaby from filing any future action pertaining in any manner to the Berrien County parcels (the Niles parcel and the Benton Harbor parcels), the related judgments of foreclosure concerning those parcels, or any previous action in this Court concerning those matters. Accordingly, I recommend that before filing any future action, Barnaby be required to file a motion, accompanied by his proposed complaint and a copy of the Court's anticipated order concerning this Report and Recommendation, seeking certification that his claims are unrelated to the Berrien County properties, the judgments of foreclosure, or the issues or claims asserted in this or any other action previously filed in this Court. In such a case, the Clerk will docket the motion and proposed complaint as a new case but will not issue process until a magistrate judge issues the required certification and directs that process be issued.

### III. Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendants' motions to dismiss (ECF Nos. 116, 121, 150, 160, 162, 195, and 206) and dismiss all claims against all

Defendants with prejudice for failure to state a claim and/or lack of subject matter jurisdiction. I further recommend that the Court **deny** Barnaby's amended request for entry of a default judgment. (ECF No. 182.) Finally, I recommend that the Court **grant** the City's motion for Rule 11 sanctions (ECF No. 148) and award the City $1,500.00 against Barnaby as a monetary sanction for violating Rule 11 and that the Court impose a filing restriction as set forth herein.

Finally, **IT IS HEREBY ORDERED** that Barnaby's objection (ECF No. 142) is **overruled**; his motion for leave to file a fourth amended complaint (ECF No. 146) is **denied**; and his motions for leave to file and issue summonses (ECF Nos. 189 and 199) are **denied as moot**.

Date:  July 9, 2024

/s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

## <u>NOTICE</u>

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).